








BJR     9/13/00     14:16

3:00-CV-01839   VESS V. CIBAGEIGY CORP USA

*1*

*CMP.*

Donald F. Hildre; SBN 066188
Thomas Haklar; SBN 169039
Peggy J. Reali; SBN 153102
DOUGHERTY, HILDRE, DUDEK & HAKLAR
2550 Fifth Avenue, Suite 600
San Diego, CA 92103
(619) 232-9131, FAX (619) 232-7317

John P. Coale; SBN 212662
Diane Cooley; SBN 431817
COALE, COOLEY, LIETZ, McINERNY & BROADUS
818 Connecticut Avenue, N.W., Suite 857
Washington, D.C. 20006
(202) 887-4770; Fax (202) 887-4778

Richard Scruggs
SCRUGGS, MILLETTE, BOVEMAN & DENT P.A.
P.O. Drawer 1425
Pascagoula, Mississippi 39568-1425
(228) 762-6068

Additional attorneys listed on signature page

FILED

00 SEP 13 AM 10: 22

BY: B. Reed
DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD D. VESS, a Minor, by DEBORAH VESS, his Guardian ad Litem, individually, on behalf of those Similarly Situated and on behalf of the General Public of the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>CIBA-GEIGY CORP. USA; NOVARTIS PHARMACEUTICALS CORP.; CHILDREN AND ADULTS WITH ATTENTION-DEFICIT/ HYPERACTIVITY DISORDER (CHADD); AMERICAN PSYCHIATRIC ASSOCIATION, and DOES 1 through 100, inclusive,<br><br>Defendants. | **'00 CV 1839 E (CGA)**<br>CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT [CALIFORNIA CIVIL CODE §1750 et seq];**<br><br>**and**<br><br>**COMPLAINT FOR RESTITUTION AND INJUNCTIVE RELIEF UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 AND §17500**<br><br>**and**<br><br>**DEMAND FOR JURY TRIAL** |

Individual and representative Plaintiff TODD D. VESS, by and through DEBORAH VESS as his Guardian ad Litem ("Plaintiff"), on behalf of the general public on behalf of those similarly situated,

---

1                                                                 *CLASS ACTION COMPLAINT*

alleges on personal knowledge those facts which pertain to the named Plaintiff or to his attorneys and further allege on information and belief as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds Seventy-Five Thousand dollars ($75,000.00) and because there is complete diversity of citizenship between plaintiff and all defendants.

2. Venue is appropriate pursuant to 28 U.S.C. §1391.

3. At all relevant times, Defendants have done and continue to do business in the State of California and County of San Diego. They have made contracts to be performed in whole or in part in California. Defendants' products have been manufactured, tested, sold, offered for sale, supplied or placed in the stream of commerce in California. In the course of business, Defendants have materially participated with other Defendants in performing the acts described above, while knowing that Ritalin was dangerous and substantially certain to cause injury to Plaintiff and others similarly situated. They have received and continue to receive substantial compensation and profits from the sale of Ritalin in California and San Diego County. Defendants have made material omissions and misrepresentations in California. The wrongful acts and conduct, in furtherance of a conspiracy, are the basis of the claims that have occurred and continue to occur in California and San Diego County.

## PARTIES

**A.    Plaintiff (and Those Similarly Situated)**

4. TODD D. VESS, individually, through his Guardian ad Litem, DEBORAH VESS, is a minor who resides in the State of California, County of San Diego and County, and appears individually with respect to all causes of action, and also appears on behalf of those individuals similarly situated with respect to the First Cause of Action.

**B.    Plaintiff (and the General Public)**

5. With respect to the Second and Third Causes of Action, plaintiff, a resident of the State of California, brings this action pursuant to California Business and Professions Code §17204, individually and as a private attorney-general on behalf of the members of the general public of California.

*CLASS ACTION COMPLAINT*

6. Plaintiff was prescribed, and purchased and ingested, the drug Ritalin in June, 1994, when he was nine years of age.

**C. Defendants.**

7. Defendant CIBA-GEIGY CORP. USA is a corporation with its principal place of business in New Jersey and its corporate headquarters in the State of New York. It may be served through its registered agent in the state of California. The Prentice-Hall Corporation System, Inc., 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833. This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

8. Defendant NOVARTIS PHARMACEUTICALS CORP. is a corporation with its principal place of business and corporate headquarters in New Jersey. It may be served through its registered agent in the State of California. Corporation Service Company, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833. This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

9. Defendant CHILDREN AND ADULTS WITH ATTENTION-DEFICIT / HYPERACTIVITY DISORDER (CHADD) is an unincorporated association with its principal office in Maryland. It may be served by serving its registered agent in California. Larry Komar, 1104 East Walnut Creek, Covina, California 91724. This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

10. Defendant AMERICAN PSYCHIATRIC ASSOCIATION is a nonprofit corporation with its principal place of business in Washington, D.C. It may be served by serving its registered agent in California. Paracorp Incorporated, 1130 K Street, Suite LL60, Sacramento, California 95814. This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

11. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, the true names and capacities, whether individual, corporate, associate or otherwise of defendants DOES 1 through 100, inclusive, are unknown at this time to plaintiff who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein by such fictitious names were involved in the distribution,

manufacturing, promotion and/or sale of Ritalin, and were in some way legally responsible for the events and happenings herein referred to which were a legal cause and substantial factor in bringing about injuries and damages to plaintiff as alleged. Plaintiff will amend this complaint to allege the true names and capacities of the DOE defendants when ascertained.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12. Ritalin is a psycho stimulant drug. It is the trade name for a pharmacological substance known as methylphenidate. Methylphenidate, and therefore Ritalin, are "Class II" or "Schedule II" controlled substances under the Controlled Substance Act. See 21 U.S.C. §812; 21 C.F.R. §1308.12.

13. From approximately 1955 through 1995, the exclusive or primary manufacturer and supplier of Ritalin in this country was defendant Ciba-Geigy Corp., USA ("Ciba"). In 1996, Ciba merged with Sandoz Pharmaceuticals Corp. to become defendant Novartis Pharmaceutical Corp. ("Novartis"). Upon information and belief, Novartis is presently, and has been since 1996, the sole or primary manufacturer and supplier of Ritalin in the United States. Ciba, however, continues as a separate corporate entity. For ease of reference, defendants Ciba and Novartis are sometimes referred to in this complaint as "Ciba/Novartis."

14. Ciba/Novartis has manufactured, marketed and sold Ritalin since approximately 1955. The product was promoted, beginning in the 1960's, by Ciba as an antidepressant "which brightens moods and improves performance." Defendant also claimed effectiveness for depression, chronic fatigue and psychoneurosis. From 1955 until the late 1970's, Ciba aggressively sought applications and markets for Ritalin in an effort to boost sales and profits.

15. Ciba/Novartis, in combination with the defendant doctors and the American Psychiatric Association (APA), planned, conspired, and colluded to create, develop, promote, and confirm the diagnoses of Attention Deficit Disorder (ADD) and Attention Deficit Hyperactivity Disorder (ADHD) in a highly successful effort to increase the market for its product Ritalin. Due to the concerted efforts of these parties, Attention Deficit Disorder was first listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM) in 1980. The DSM recognized ADHD as "diagnosis" in 1987.

16. The DSM is a widely used and disseminated compendium of psychiatric diagnoses. Listing of a "diagnosis" in the DSM provides an official-seeming, medical imprimatur to a particular set of symptoms or behaviors that may, in fact, be entirely normal. A new official "diagnosis" in the DSM, however, generates vast numbers of new prescriptions, increased insurance coverage, and great public attention.

17. In addition to its actions and involvement with the creation of the ADD and ADHD diagnoses, Ciba/Novartis took steps to promote and dramatically increase the sales of Ritalin by way of the following:

    a. Actively promoting and supporting the concept that a significant percentage of children suffer from a "disease" which required narcotic treatment/therapy;

    b. Actively promoting Ritalin as the "drug of choice" to treat children diagnosed with ADD and ADHD;

    c. Actively supporting groups such as Defendant CHADD, both financially and with other means, so that such organizations would promote and support (as a supposed neutral party) the ever-increasing implementation of the ADD/ADHD diagnosis as well as directly increasing Ritalin sales;

    d. Distributing misleading sales and promotional literature to parents, schools, and other interested persons in a successful effort to further increase the number of diagnoses and the number of persons prescribed Ritalin.

18. Ciba/Novartis deliberately, willfully, intentionally, and negligently promoted the diagnosis of ADD/ADHD and sales of Ritalin through its promotional literature and through its training of sales representatives. In so doing, despite knowledge of such problems and/or adverse reactions, Defendants willfully failed to address or provide adequate information to consumers, doctors, and/or schools concerning the many significant hazards of methylphenidate use and prescription, including, but not limited to, the following:

    a. Cardiovascular problems, including palpitations, tachycardia, hypertension, arrhythmias, chest pain and cardiac arrest;

    b. Central nervous system problems, including psychosis with hallucinations,

excessive brain stimulation (convulsions), drowsiness, confusion, insomnia, agitation, anxiety, irritability, nervousness, dysphoria, impaired cognitive test performance, dyskinesia, depression, and zombie-like constriction of affect and spontaneity;

c.    Gastrointestinal problems, including anorexia, nausea, vomiting, stomach ailments, dry mouth, and constipation;

d.    Pituitary dysfunction, including growth hormone and prolactin disruption, weight loss, growth suppression, growth retardation, anemia, exfoliate dermatitis, leukopenia, etc.

19.    Despite information in the medical and scientific literature concerning these side effects of Ritalin use, Defendants failed in all respects to advise potential consumers, doctors, and/or schools, teachers or other interested parties of the nature and extent of such side effects. Furthermore, Defendant CHADD similarly failed to provide adequate information to interested parties concerning the nature and extent of potential side effects.

20.    In addition, Ciba/Novartis continuously misrepresented to the consuming public, physicians and other interested parties, the efficacy of the drug Ritalin, without ever advising such persons that Ritalin usage would not improve academic performance and/or have any long term effect on the symptoms associated with ADD and/or ADHD.

21.    Defendant American Psychiatric Association ("APA") conspired, colluded and cooperated with the other Defendants to facilitate and encourage the development and acceptance of diagnosis of ADD (1980) and ADHD (1987). While so doing, the APA received and accepted financial contributions from Ciba as well as other members of the pharmaceutical industry, which donations and contributions directly effected and caused APA to make every effort possible to support and confirm a new medical "diagnosis" for which a stated treatment would be methylphenidate, i.e., Ritalin. In so doing, Defendant APA aided, abetted and promoted the concept of Ritalin therapy for treatment of the vast numbers of children who began to be diagnosed with ADD and ADHD, pursuant to the APA's recommendations and support for the diagnosis.

22.    The interrelationship between the drug industry and the APA caused and contributed

to the APA's assistance, support, aid and collusion with Ciba/Novartis in creating a novel medical "diagnosis" that could be, and ultimately was, applied to a large percentage of children in the United States, and for which the APA, in combination with other defendants, continued and presently continue to promote the prescription, use, and sale of Ritalin.

23. Defendant CHADD (Children and Adults with Attention-Deficit/Hyperactivity Disorder) is an unincorporated association dedicated and promoted to the principle that significant numbers of persons suffer from a "disease" that did not exist until 1980. CHADD works closely with Ciba/Novartis and the American Psychiatric Association.

24. Based on information and belief, CHADD has been a recipient of financial donations and contributions from Defendants Ciba/Novartis for many years. CHADD received $748,000 from Ciba/Novartis in the period 1991 to 1994 alone. During the periods when CHADD received funding from Ciba/Novartis, CHADD deliberately made efforts to increase the sales of Ritalin, and to increase the supply of methylphenidate available in the United States, and to reduce or eliminate laws and restrictions concerning the use of Ritalin and methylphenidate in the United States, all at the request, and to the financial benefit, of Ciba/Novartis.

25. Ciba/Novartis made such financial contributions with the purpose of advertising and promoting sales of Ritalin - an internationally controlled substance. Ciba/Novartis has thus repeatedly violated Article 10 of the United Nations Convention on Psychotropic Substances, 1019 U.N.T.S. 175 (1971).

26. CHADD's activities nationwide have led to a significant increase in the amount of Ritalin taken by school children and have directly resulted in enormous profits to Ciba/Novartis. In so doing, CHADD has promoted the concept of a diagnosis of "disease" or "brain damage" as well as promoting and supporting the concept that appropriate therapy for such a diagnosis is a prescription for Ritalin. In so doing, CHADD has acted as an agent of, and/or has aided and abetted Ciba/Novartis in its efforts to increase sales and earn additional profits from the sale of Ritalin.

## CO-CONSPIRATORS

27. Each Defendant is sued individually as a primary violator and as a co-conspirator. The liability of each Defendant arises from each Defendant's agreement to commit unlawful acts and the

performance of those acts, in concert, to further the agreement. The conspiracy began as early as the 1950s and continues to the present. Defendants and each of them knowingly and willfully entered into and pursued a common course of conduct, by agreement with the other Defendants and third parties, to commit all or part of the unlawful acts alleged herein. Such unlawful acts were committed intentionally, knowingly, maliciously and without legal justification or excuse.

28. All Defendants conspired, combined and colluded to promote and dramatically increase the sales of Ritalin by way of the following:

a. Actively promoting and supporting the concept that a significant percentage of children suffer from a "disease" which required narcotic treatment/therapy;

b. Actively promoting Ritalin as the "drug of choice" to treat children diagnosed with ADD and ADHD;

c. Distributing misleading sales and promotional literature to parents, schools and other interested persons in a successful effort to further increase the number of diagnoses and the number of persons prescribed Ritalin;

d. Deliberately neglecting to address or provide adequate information to consumers, doctors, and/or schools concerning the many significant hazards of methylphenidate use and prescription, including, but not limited to, the following:

    i. Cardiovascular problems, including palpitations, tachycardia, hypertension, arrhythmias, chest pain and cardiac arrest;

    ii. Central nervous system problems, including psychosis with hallucinations, excessive brain stimulation (convulsions), drowsiness, confusion, insomnia, agitation, anxiety, irritability, nervousness, dysphoria, impaired cognitive test performance, dyskinesia, depression, and zombie-like constriction of affect and spontaneity;

    iii. Gastrointestinal problems, including anorexia, nausea, vomiting, stomach ailments, dry mouth, and constipation;

    iv. Pituitary dysfunction, including growth hormone and prolactin

disruption, weight loss, growth suppression, growth retardation, anemia, exfoliate dermatitis, leukopenia, etc.

e.      Misrepresenting to the consuming public, physicians and other interested parties, the efficacy of the drug Ritalin, without ever advising such persons that Ritalin usage would not stimulate or improve academic performance and/or have any long term effect on the symptoms associated with ADD and/or ADHD.

f.      Facilitating the creation of a new diagnoses in the DSM.

29.      Despite information in the medical and scientific literature concerning these side effects of Ritalin use, Defendants failed in all respects to advise potential consumers, doctors, and/or schools, teachers or other interested parties of the nature and extent of such side effects. Furthermore, Defendant CHADD similarly failed to provide adequate information to interested parties concerning the nature and extent of potential side effects.

30.      The interrelationship between Ciba/Novartis, the drug industry as a whole, and the APA caused and contributed to the APA's assistance, support, aid, and collusion with Ciba/Novartis in creating a novel medical "diagnosis" that could be, and ultimately was, applied to a large percentage of children in the United States, and for which the APA, in combination with other defendants, continued and presently continue to promote the prescription, use and sale of Ritalin.

## CLASS ACTION ALLEGATIONS
### By Plaintiff on Behalf of All Others Similarly Situated
### (Relating to Count One - Violation of California Civil Code § 1750 *et seq.*)

31.      Plaintiff brings this Class action, individually and on behalf of others similarly situated, as a Class action pursuant to Federal Rule of Civil Procedure, Rule 23 and Section 1781 of the California Civil Code. The Class which Plaintiffs seek to represent is:

The class shall be composed of all California residents who purchased and/or ingested the drug Ritalin.

32.      Specifically excluded from the Plaintiff Class are Defendants herein, any entity in which any of the Defendants has a controlling interest, any officers, directors or employees of any of the Defendants and legal representatives, heirs, successors, and assignees of any of the Defendants. Also excluded are any federal, state or local entities.

33. This action is brought and may properly be maintained as a Class action pursuant to Federal Rule of Civil Procedure 23. The community of interest in the litigation is well defined and the proposed Class is easily ascertainable. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of this provision. In addition this action may be brought under California Civil Code § 1781.

34. Numerosity of the Class. The Class is so numerous that the individual joinder of all Members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff believes that at a minimum, there are thousands of Class Members located throughout the State of California.

35. Common Questions Predominate. Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Members of the Class. These common legal and factual questions arise from various issues, which do not vary among Class Members:

(a) All Defendants conspired, combined and colluded to promote and dramatically increase the sales of Ritalin by way of the following:

i. Actively promoting and supporting the concept that a significant percentage of children suffer from a "disease" which required narcotic treatment/therapy;

ii. Actively promoting Ritalin as the "drug of choice" to treat children diagnosed with ADD and ADHD;

iii. Distributing misleading sales and promotional literature to parents, schools and other interested persons in a successful effort to further increase the number of diagnoses and the number of persons prescribed Ritalin;

iv. Deliberately neglecting to address or provide adequate information to consumers, doctors, and/or schools concerning the many significant hazards of methylphenidate use and prescription, including, but not limited to, the following:

(A) Cardiovascular problems, including palpitations, tachycardia, hypertension, arrhythmias, chest pain and cardiac arrest;

(B) Central nervous system problems, including psychosis with hallucinations, excessive brain stimulation (convulsions), drowsiness, confusion, insomnia, agitation, anxiety, irritability, nervousness, dysphoria, impaired cognitive test performance, dyskinesia, depression, and zombie-like constriction of affect and spontaneity;

(C) Gastrointestinal problems, including anorexia, nausea, vomiting, stomach ailments, dry mouth, and constipation;

(D) Pituitary dysfunction, including growth hormone and prolactin disruption, weight loss, growth suppression, growth retardation, anemia, exfoliate dermatitis, leukopenia, etc.

v. Misrepresenting to the consuming public, physicians and other interested parties, the efficacy of the drug Ritalin, without ever advising such persons that Ritalin usage would not stimulate or improve academic performance and/or have any long term effect on the symptoms associated with ADD and/or ADHD.

vi. Facilitating the creation of a new diagnoses in the DSM.

(b) Despite information in the medical and scientific literature concerning these side effects of Ritalin use, Defendants failed in all respects to advise potential consumers, doctors, and/or schools, teachers or other interested parties of the nature and extent of such side effects. Furthermore, Defendant CHADD similarly failed to provide adequate information to interested parties concerning the nature and extent of potential side effects.

36. Typicality of Claims. Plaintiff's claims are typical of the claims of Members of the Class, all of whom have purchased and/or ingested the Ritalin manufactured, distributed, and marketed by Defendants. Plaintiff and all Class Members have sustained, and will continue to sustain damages, injuries and irreparable harm arising out of Defendants' common course of conduct.

37. Adequacy of Representation. Plaintiff, by Deborah Vess, his Guardian ad Litem, will fairly and adequately protect the interest of Members of the Plaintiff Class. Plaintiff resides in California and purchased and/or ingested Defendants' products in California during the Class period.

Plaintiff is representative Members of the Class, are united by a common interest, and are adequate representatives since they have no interests that are adverse to the interests of absent Class Members. Plaintiff has retained counsel who are both competent and experienced in the prosecution of complex consumer fraud, mass tort and class actions. Plaintiff and his counsel intend to prosecute this action vigorously for the benefit of the Class. Plaintiff and his counsel will fairly and adequately protect the interests of the Members of the Class.

38. Superiority and Substantial Benefit. A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of Class Members' claims is impractical. Even if all Class Members could afford individual litigation, the court system could not. It would be unduly burdensome for the courts to adjudicate identical legal and factual issues in hundreds of thousands of cases. Individual litigation increases delay and expense to all parties, and especially the court system, associated with the resolution of the complex legal and factual issues of the case. The prosecution of separate actions by the individual Members of the Class would create a risk of inconsistent adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants. The prosecution of separate actions would create a risk of adjudications that would be dispositive of the interests of the other Class Members who are not parties to such adjudications, thus substantially impairing the ability of such non-party Class Members to protect their interests. Individual litigation of this case presents a great potential for inconsistent or contradictory judgments.

39. Class action treatment is a superior method of adjudication and provides a substantial benefit to the litigants and the courts since it presents far fewer management difficulties and provides the benefits of a single adjudication and comprehensive supervision by a single court. Furthermore, as the damages suffered by each individual Member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual Members of the Class to redress the wrongs done to them. An important public interest will be served by addressing the matter as a class action. Notice of the pendency and of any resolution of this class action can be provided to Class Members by publication and broadcast.

40. Furthermore, Plaintiff's claims are certifiable as a Class action because Defendants

have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

41. Plaintiff, by Deborah Vess, his Guardian ad Litem, is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Accordingly, the proposed Class fulfills the certification criteria of California law and certification of the above-defined Class is appropriate under one or more of the provisions of California law.

## FIRST CAUSE OF ACTION

### CLASS ACTION FOR VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT
[California Civil Code §1750, et seq.]
(By All Plaintiffs Against All Defendants)

42. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

43. California Civil Code §1770 provides, in relevant part:

The following unfair methods of competition and unfair or deceptive

acts or practices undertaken by any person in a transaction intended to

result or which results in the sale or lease of goods or services to any

consumer are unlawful: . . .

(2) Misrepresenting the source, sponsorship, approval or

certification of goods or services;

(3) Misrepresenting the affiliation, connection or association with,

or certification by, another;

. . .

(5) Representing that goods or services have sponsorship,

approval, characteristics, ingredients, uses, benefits or quantities which

they do not have or that a person has a sponsorship, approval, status,

affiliation, or connection which he or she does not have.

. . .

(7) Representing that goods or services are of a particular

---

13

standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

44. Defendants have committed, and continue to commit, an unlawful method of competition, and unfair and deceptive acts in violation of Civil Code § 1770 by their commission of deceptive acts which have deceived and continue to deceive the consuming public, including Plaintiff. In particular, Defendants affirmatively misrepresented material facts and failed to disclose material facts to the Plaintiff, including but not limited to the following:

a. Actively promoting and supporting the concept that a significant percentage of children suffer from a "disease" which required narcotic treatment/ therapy;

b. Actively promoting Ritalin as the "drug of choice" to treat children diagnosed with ADD and ADHD;

c. Distributing misleading sales and promotional literature to parents, schools and other interested persons in a successful effort to further increase the number of diagnoses and the number of persons prescribed Ritalin;

d. Deliberately neglecting to address or provide adequate information to consumers, doctors, and/or schools concerning the many significant hazards of methylphenidate use and prescription, including, but not limited to, the following:

i. Cardiovascular problems, including palpitations, tachycardia, hypertension, arrhythmias, chest pain and cardiac arrest;

ii. Central nervous system problems, including psychosis with hallucinations, excessive brain stimulation (convulsions), drowsiness, confusion, insomnia, agitation, anxiety, irritability, nervousness, dysphoria, impaired cognitive test performance, dyskinesia, depression, and zombie-like constriction of affect and spontaneity;

iii. Gastrointestinal problems, including anorexia, nausea, vomiting, stomach ailments, dry mouth, and constipation;

iv. Pituitary dysfunction, including growth hormone and prolactin

disruption, weight loss, growth suppression, growth retardation, anemia, exfoliate dermatitis, leukopenia, etc.

e.    Misrepresenting to the consuming public, physicians and other interested parties, the efficacy of the drug Ritalin, without ever advising such persons that Ritalin usage would not stimulate or improve academic performance and/or have any long term effect on the symptoms associated with ADD and/or ADHD.

f.    Facilitating the creation of a new diagnoses in the DSM.

45.    Plaintiff, pursuant to California Civil Code §1780, seeks an order of this court enjoining such methods, acts and practices and an order requiring the Defendants to undertake the following:

a.    *Disgorge all revenues and profits acquired as a result of the unlawful methods, acts and practices;*

b.    Provide restitution resulting from the unlawful method, acts and practices of defendants;

c.    Pay exemplary damages; and

d.    Any other relief this Court deems proper.

## SECOND CAUSE OF ACTION

### UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200
### (Against All Named Defendants)

46.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

47.    Plaintiff hereby brings this action individually and on behalf of the general public pursuant to Section 17200 et seq. of the Business and Professions Code of the State of California, the "Unfair Competition Act."

48.    The acts complained of in each of the preceding paragraphs of this complaint, and each of them, constitute unfair and/or unlawful acts in competition in violation of Section 17200 of the California Business and Professions Code. Such acts and violations have not abated and will continue to occur unless enjoined.

49. These violations have injured Plaintiff, the General Public, and fair and lawful competition. These violations have coextensively unjustly enriched the defendants. Plaintiff and the general public are entitled to injunctive, disgorgement/restitution, and other equitable relief.

### THIRD CAUSE OF ACTION

**INDUCEMENT THROUGH FALSE AND MISLEADING STATEMENT
UNDER BUSINESS AND PROFESSIONS CODE SECTION 17500
(Against All Defendants)**

50. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

51. Plaintiff hereby brings this action individually and on behalf of the general public pursuant to Section 17500 et seq. of the Business and Professions Code of the State of California, the "Unfair Competition Act."

52. Notwithstanding their knowledge of the increased threat cardiovascular problems, central nervous system problems, gastrointestinal problems, and pituitary dysfunction, among other adverse consequences connected to the use of Ritalin, as described above, defendants, and each of them, continued to market, advertise and sell Ritalin to physicians, health care personnel and teachers, and to the General Public.

53. The acts of untrue and misleading advertising by defendants, and each of them, as described above presents a continuing threat to members of the general public of California in that their prescription and use of the drug methylphenidate presents the serious threat of hazards such as cardiovascular, central nervous system and gastrointestinal problems, as well as pituitary dysfunction.

54. The general public of the state of California have no other adequate remedy of law in that individual lawsuits would prove too time consuming and burdensome and would not properly address the monetary damage and equitable relief requested herein.

55. As a direct and proximate result of the aforementioned acts, Defendants received and continue to receive in excess of a billion dollars in sales from the sale of Ritalin to members of the General Public of California who were prescribed and ingested Ritalin, to their detriment.

56. These violations have injured the General Public and fair and lawful competition. These violations have coextensively unjustly enriched defendants, and each of them. The General

Public is entitled to disgorgement of profits, restitution and other equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, jointly and severally, as follows:

**For the First Cause of Action:**

1. Plaintiff prays for injunctive and declaratory relief as a result of Defendants' violation of California Civil Code §1750 *et seq*, as follows:

(a) Injunctive relief to halt unlawful methods, acts and practices engaged in by defendants;

(b) Requiring Defendants to disgorge all revenues and profits acquired as a result of their unlawful methods, acts and practices;

(c) Requiring Defendants to provide restitution resulting from unlawful methods, acts and practices of defendants;

(d) Requiring Defendants to pay exemplary damages; and

(e) Any further relief this Court deems proper;

**For the Second and Third Causes of Action:**

1. Plaintiff prays for equitable relief for violations of Section 17200 and Section 17500 of the Business and Professions Code as hereinabove alleged. Such relief includes:

(a) Injunctive relief to halt prior violations of law and to assure fair and lawful competition, including court orders regulating advertising, marketing, and production practices;

(b) Restitution to plaintiff and the general public who have been injured or otherwise disadvantaged by defendants' unfair and unlawful acts in competition;

(c) Restitution sufficient to fully disgorge the revenues obtained from plaintiff and the general public for unfair and unlawful acts in competition;

(d) For attorneys' fees as provided by statute and/or pursuant to the "common fund" doctrine and/or pursuant to equitable principles of contribution.

**For All Causes of Action:**

1. For Plaintiff's reasonable attorneys' fees and costs.

2. For prejudgment interest as provided by law.

3. For costs of suit incurred herein.

4. For such other and further relief as this Court deems equitable, just and proper.

**JURY DEMAND**

Plaintiff herein demands a trial by jury.

DATED: September 13, 2000      DOUGHERTY, HILDRE, DUDEK & HAKLAR

By: _____
Donald F. Hildre
Thomas D. Haklar
Peggy J. Reali
DOUGHERTY, HILDRE, DUDEK & HAKLAR
2550 Fifth Ave., Suite 600
San Diego, CA 92103
(619) 232-9131; Fax (619) 232-7317

Attorneys for Plaintiff Todd Vess, a Minor, by and through
Deborah Vess, his Guardian ad Litem,
individually and on Behalf of Those Similarly
Situated and on behalf of the General Public.

John P. Coale; Bar No. 212662
Diane Cooley; Bar No. 431817
COALE, COOLEY, LIETZ, McINERNY & BROADUS
818 Connecticut Avenue, N.W., Suite 857
Washington, D.C. 20006
(202) 887-4770; Fax (202) 887-4778

Richard Scruggs
SCRUGGS, MILLETTE, BOVEMAN & DENT P.A.
P.O. Drawer 1425
Pascagoula, Mississippi 39568-1425
(228) 762-6068

Marc C. Saperstein,
Kevin Decie,
DAVIS, SAPERSTEIN & SOLOMON
375 Cedar Lane
Teaneck, NJ 07666
(201)907-5000; Fax (201) 692-0444

C. Andrew Waters (CA Bar No. 147259)
Tex. State Bar No. 20911450
WATERS & KRAUS
3219 McKinney Ave.
Dallas, Texas 75204
(214) 357-6244; Fax (214) 522-9286

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

TODD D VESS, a Minor, by DEBORAH VESS, his Guardian ad Litem, individually, on behalf of those Similarly Situated and on behalf of the General Public of the State of California

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF San Diego
EXCEPT IN U.S. PLAINTIFF CASES

## DEFENDANTS

CIBA-GEIGY CORP, USA; NOVARTIS PHARMACEUTICALS CORP; CHILDREN AND ADULTS WITH ATTENTION-DEFICIT/ HYPERACTIVITY DISORDER (CHADD); AMERICAN PSYCHIATRIC ASSOCIATION; and DOES 1-100

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT New York State

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Thomas D Haklar
DOUGHERTY & HILDRE, APC
2550 Fifth Avenue, Suite 600
San Diego, California 92103-6624
(619) 232-9131

ATTORNEYS (IF KNOWN)

'00 CV 1839 E' (CGA)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity (Indicate Citizenship of Parties In Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
(For Diversity Cases Only) FOR PLAINTIFF AND ONE FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] Appeal to District Judge from Magistrate Judgment

## V. REQUESTED IN [X] CHECK IF THIS IS A CLASS ACTION

COMPLAINT: UNDER F.R.C.P. 23

DEMAND $ in excess of $75,000

Check YES only if demanded in complaint:
JURY DEMAND: [X] YES [ ] NO

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 §1332. This is a consumer rights action against the manufacturers and promoters of the drug RITALIN who conspired to profit by misrepresentations to the public.

## VII. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| OTHER STATUTES | CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY |
|---|---|---|---|---|---|
| [ ] 400 State Reapportionment | [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 |
| [ ] 410 Antitrust | [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury- Med Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 |
| [ ] 430 Banks and Banking | [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [X] 365 Personal Injury- Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | |
| [ ] 450 Commerce/ICC Rates/etc | [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | | **PROPERTY RIGHTS** |
| [ ] 460 Deportation | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 630 Liquor Laws | [ ] 820 Copyrights |
| [ ] 470 Racketeer Influenced and Corrupt Organizations | [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 640 R.R. & Truck | [ ] 830 Patent |
| [ ] 810 Selective Service | [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 650 Airline Regs | [ ] 840 Trademark |
| [ ] 850 Securities/Commodities/ Exchange | | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | **SOCIAL SECURITY** |
| [ ] 875 Customer Challenge 12 USC 3410 | [ ] 153 Recovery of Overpayment Of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 690 Other | [ ] 861 HIA (1395ff) |
| [ ] 891 Agricultural Act | [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | **LABOR** | [ ] 862 Black Lung (923) |
| [ ] 892 Economic Stabilization Act | [ ] 190 Other Contract | | | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) |
| | [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI |
| [ ] 893 Environmental Matters | **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 865 RSI (405(g)) |
| [ ] 894 Energy Allocation Act | [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** |
| [ ] 895 Freedom of Information Act | [ ] 220 Foreclosure | [ ] 442 Employment | Habeas Corpus | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 900 Appeal of Fee Determination Under Equal Access to Justice | [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 871 IRS - Third Party 26 USC 7609 |
| | [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | |
| [ ] 950 Constitutionality of State Statutes | [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. Security Act | |
| [ ] 890 Other Statutory Actions | [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | |
| | | | [ ] 555 Prison Condition | | |

## VIII(a). IDENTICAL CASES: Has this action been previously filed and dismissed, remanded or closed? __X__ No _____ Yes

If yes, list case number(s): _____

CV71 (3/97) CIVIL COVER SHEET - Continued on Reverse

# 063715 $50.--

Page 1 of 2
CCD-JS44