















AXC    11/20/00    9:15

3:00-CV-01839    VESS V. CIBAGEIGY CORP USA

*31*

*P/A.*

FAEGRE & BENSON LLP
JAMES A. O'NEAL (Admitted PRO HAC VICE)
BRUCE JONES (Admitted PRO HAC VICE
JOSEPH M. PRICE (Admitted PRO HAC VICE)
BRIDGET M. AHMANN (Admitted PRO HAC VICE)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Telephone:  (612) 336-3000
Facsimile:  (619) 336-3026

ARTER & HADDEN LLP
ROXANNE M. WILSON - STATE BAR NO. 94627
725 S. Figueroa Street, Suite 3400
Los Angeles, California 90017-5434
Telephone:  (213) 430-3000
Facsimile:  (213) 617-9255

ARTER & HADDEN LLP
MICHAEL DRURY - STATE BAR NO. 177993
402 West Broadway, Suite 690
San Diego, California 92101-8504
Telephone:  (619) 238-0001
Facsimile:  (619) 238-8333

Attorneys for Defendants
Novartis Pharmaceuticals Corp. and Ciba-
Geigy Corp. USA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Todd D. Vess, a Minor, by Deborah Vess, his Guardian ad Litem, individually, on behalf of those Similarly Situated and on behalf of the General Public of the State of California,<br><br>       Plaintiffs,<br><br>   v.<br><br>Ciba-Geigy Corp. USA; Novartis Pharmaceuticals Corp.; Children and Adults with Attention-Deficit Hyperactivity Disorder (CHADD); American Psychiatric Association; and Does 1 through 100, inclusive,<br><br>       Defendants. | Case No. 00-CV-1839<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE CLAIMS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br><br>DATE:  JANUARY 16, 2001<br>TIME:  10:30 a.m.<br>COURTROOM: 2<br>JUDGE: HONORABLE RUDI M. BREWSTER |

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8711.1
66041\06019



1

Case No. 00 CV 1839
Memorandum of Points and Authorities in
Support of Motion to Strike

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ ii

FACTUAL BACKGROUND...........................................................................................1

   The History of ADD and ADHD, Ritalin®, and the DSM Criteria.................................1

   Novartis's Role in the Methylphenidate Market................................................................1

   The Current Lawsuit ............................................................................................................2

ARGUMENT....................................................................................................................3

   I.     CALIFORNIA'S ANTI-SLAPP STATUTE AFFORDS
          NOVARTIS PROTECTION AGAINST PLAINTIFF'S CLAIMS .................4

          A.    Plaintiff's Claims Against Novartis Arise From Novartis's
                Acts in Furtherance of its Rights of Free Speech..........................................5

          B.    Plaintiff's Suit Has Other Indicia of a SLAPP Suit ...................................7

   II.    PLAINTIFF CANNOT ESTABLISH A PROBABILITY THAT
          HE CAN PREVAIL ON HIS CLAIMS.............................................................11

          A.    Plaintiff Cannot Establish a Sufficient Legal Basis for His
                Claims...........................................................................................................12

                1.    Plaintiff cannot establish a sufficient legal theory
                      for his claims concerning the creation of the
                      ADD/ADHD diagnosis and DSM diagnostic criteria.................12

                2.    Plaintiff cannot establish a sufficient legal theory
                        for his claims concerning the side effects of
                        Ritalin®.......................................................................................14

          B.    Plaintiff Cannot Establish a Sufficient Factual Basis for His
                 Claims...........................................................................................................15

   III.   NOVARTIS IS ENTITLED TO RECOVER ITS COSTS AND
          ATTORNEY'S FEES ......................................................................................18

CONCLUSION................................................................................................................19

ARTER & HADDEN LLP
402 West Broadway
8ᵗʰ Floor
San Diego, California
92101-8504

8711.1
66041\06019

i

Case No. 00 CV01839
Memorandum of Points and Authorities in
Support of Special Motion to Strike

1

TABLE OF AUTHORITIES

**FEDERAL CASES**

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579...............................................15, 16

Metabolife International, Inc. v. Wornick, 72 F. Supp. 2d 1160
        (S.D. Cal. 1999) ............................................................................3, 12, 13, 15, 17

Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963
        (9th Cir. 1999)...............................................................................3, 5, 12, 18, 19

Nicosia v. DeRooy, 72 F. Supp. 2d 1093 (N.D. Cal. 1999)...........................................5, 13

Pegasus Holdings v. Veterinary Centers of America, 38 F. Supp. 2d 1158
        (C.D. Cal. 1998)...........................................................................................12

Rogers v. Home Shopping Network, 57 F. Supp. 2d 973 (C.D. Cal. 1999).............................5, 12

**STATE CASES**

Averill v. Superior Court, 42 Cal. App. 4th 1170 (1996) .................................................5

Bradbury v. Superior Court, 49 Cal. App. 4th 1108 (1996) ...............................................5

Braun v. Chronicle Publishing Co., 52 Cal. App. 4th 1036 (1997) .......................................5

Church of Scientology v. Wollersheim, 49 Cal. Rptr. 2d 620, 42 Cal. App. 4th 628
        (Cal. App. 2 Dist. 1996)................................................................................5, 9

DuPont-Merck Pharmaceutical Co. v. Superior Court, 78 Cal. App. 4th 562,
        92 Cal. Rptr. 2d 755 (Cal. Ct. App. 2000)..........................................................5,7

Evans v. Unkow, 45 Cal. Rptr. 2d 624, 38 Cal. App. 4th 1490 (Cal. App. 1 Dist 1995)..............15

Livingston v. Marie Callender's, Inc., 85 Cal. Rptr. 2d 528, 72 Cal. App. 4th 830
        (Cal. App. 2 Dist. 1999)................................................................................14

Ludwig v. Superior Court, 37 Cal. App. 4th 8 (1995) ...................................................5

Macias v. Hartwell, 55 Cal. App. 4th 669 (1997)..........................................................5

**FEDERAL REGULATIONS AND RULES**

21 C.F.R. § 10.25 (2000) ..................................................................................8

21 C.F.R. § 30 (2000) .....................................................................................8

Fed. R. Civ. P. 9(b) .....................................................................................12

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8711.1
66041\06019

ii

Case No. 00 CV01839
Memorandum of Points and Authorities in
Support of Special Motion to Strike

1    Fed. R. Evid. 702 ............................................................................................................15

2                                      **STATE STATUTES**

3    Cal. Code Civ. Proc. § 425.16(a) ..................................................................................5

4    Cal. Code Civ. Proc. § 425.16(b)(1) .................................................................3, 4, 6, 11

5    Cal. Code Civ. Proc. § 425.16 ..................................................................1, 3, 12, 19

6    Cal. Code Civ.. Proc. § 425.16(c) ..............................................................................18

7    Cal. Code Civ. Proc. § 425.16(e) ..............................................................................4, 6

8
9    Cal. Code Civ. Proc. § 1750 ..................................................................................2, 7

10   Cal. Code Civ. Proc. § 1783 ..................................................................................13, 18

11   Cal. Bus. & Prof. Code § 17200 ................................................................................2

12   Cal. Bus. & Prof. Code. §17208 ..........................................................................13, 18

13   Cal. Bus. & Prof. Code § 17500 .............................................................................2, 7

14                                      **MISCELLANEOUS**

15   American Academy of Child and Adolescent Psychiatry, *AACAP Official Action:*
16        *Practice Parameters for the Assessment and Treatment of Children, Adolescents,*
         *and Adults with Attention-Deficit/Hyperactivity Disorder,* J. Am. Acad. Child
17        Adolesc. Psychiatry Supplement, October 1997; 36(10): 855 –1215 .............................16

18   American Academy of Pediatrics, *Clinical Practice Guideline: Diagnosis and Evaluation*
19        *of the Child With Attention-Deficit/Hyperactivity Disorder,* Pediatrics Vol. 105
          No. 5........................................................................................................................16

20
21   American Medical Association, Report 5 of the Council on Scientific Affairs, June 1997,
          *Diagnosis and Treatment of Attention Deficit Hyperactivity Disorder in School*
22        *Age Children* .........................................................................................................16

23   *County Schools To Be Sued for Ritalin Use,* The Daily Record—Business and Legal
          News of Maryland Baltimore, at 1, 13 (Dec. 2, 1987)........................................................10

24
25   *Courting Disaster,* Gentleman's Quarterly, at 215 (Feb. 1989) ......................................10

26   Effect of a Media Blitz and a Threatened Lawsuit on Stimulant Treatment," 268 JAMA
          1004 (Aug. 26, 1992)...................................................................................................11

27   Executive News Service/Associated Press story, *Drug Suit,* .......................................10

28

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
82101-8504

8711.1
66041\06019

iii

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Special Motion to Strike

Group's Attack on Ritalin omits facts about drug's usefulness, doctors say," Minneapolis Star Tribune (Oct. 4, 1987) .................................................................................11

Interagency Committee on Learning Disabilities, Learning Disabilities: A Report to the U.S. Congress 194-217 (1987)..........................................................................................1

National Institute of Health, *Diagnosis and Treatment of Attention Deficit Hyperactivity Disorder*, NIH Consensus Statement 1998 Nov. 16 - 18; 16(2): 1 – 37 ..........................16

MTA Cooperative Group, *A 14-Month Randomized Clinical Trial of Treatment Strategies for Attention-Deficit/Hyperactivity Disorder*, 56 Arch. Gen Psychiatry 1073-1086 (1999)..............................................................................................16

Michael Kent Curtis, Monkey Trials: Science, Defamation, and the Expression of Dissent, 4 Wm. & Mary Bill Rts. J. 507, 582 (1995) ......................................................17

Prince George's Journal, *Suit Called Start of Drive to Take Drug Off Market*, (Lanham MD) (Oct. 26, 1987) .................................................................................10

Surgeon General, *Mental Health: A Report of the Surgeon General, "Attention-Deficit/ Hypersensitivity Disorder"* (www.surgeongeneral.gov/library/mentalhealth/ chapter3/sec4.html)..............................................................................................16

The Ritalin Controversy: What's Made This Drug's Opponents Hyperactive?," 259 JAMA 2521, 2522 (May 6, 1988) ........................................................................10

US Department of Health and Human Services, Green, Wong, Atkins, et al., *Diagnosis of Attention Deficit/Hyperactivity Disorder. Technical Review 3.* Rockville, Md.: US Dept. of Health and Human Services, Agency for Health Care Policy and Research; 1999. AHCPR publication 99 – 0050 ..............................................................16

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8711.1
66041\06019

iv

Case No. 00 CV01839
Memorandum of Points and Authorities in
Support of Special Motion to Strike

1        **MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**

2        Plaintiff has commenced this action against defendants Ciba-Geigy Corp. USA[1] and

3    Novartis Pharmaceuticals Corp. (collectively "Novartis") and two non-profit corporations,

4    asserting various claims based on the defendants' alleged conduct in public debate and

5    communications concerning the medical conditions Attention Deficit Disorder (ADD) and

6    Attention Deficit Hyperactivity Disorder (ADHD) and their treatment with the drug Ritalin®.

7    Novartis now moves this Court to strike plaintiff's claims against it pursuant to Cal. Code Civ.

8    Proc. § 425.16 on the ground that plaintiff cannot demonstrate a probability of prevailing on

9    those claims.

10       **FACTUAL BACKGROUND**

11   **The History of ADD and ADHD, Ritalin®, and the DSM Criteria**

12       The memorandum accompanying the American Psychiatric Association's special motion

13   to strike sets forth in detail the history of ADD and ADHD, and of the use of Ritalin® as part of

14   the treatment of that condition, and Novartis joins in that statement rather than repeating it here.

15   In a nutshell, ADD and ADHD have been medically recognized under various names for over a

16   century, and that Ritalin® has been documented as an effective and safe treatment for the

17   condition for nearly 40 years.  _E.g._, Interagency Committee on Learning Disabilities, Learning

18   Disabilities:  A Report to the U.S. Congress 194-217 (1987) (attached as Exhibit A to

19   accompanying Declaration of Michael Drury ("Drury Declaration")).

20   **Novartis's Role in the Methylphenidate Market**

21       Novartis's predecessor Ciba-Geigy began manufacturing methylphenidate under the

22   brand name Ritalin® in 1955.  Beginning in 1961, the FDA approved Ritalin® for the indication

23   of what is now called ADD/ADHD, and that approval continues today.  As a result of various

24   corporate transactions, Novartis took over production of Ritalin® in 1997.  The patent for the

25   drug expired in 1976, and since that time various generic forms of methylphenidate have

26   appeared on the market.

27

---

[1]   CIBA-GEIGY Corp. USA no longer exists.  Novartis Pharmaceuticals is the successor to CIBA-GEIGY Corp.
28   USA for all purposes relevant to this lawsuit.

ARTER & HADDEN LLP
402 West Broadway
8th Floor
San Diego, California
92101-8504

8710.1
66041\06019                                    1

Case No. 00-CV-1839
Memorandum of Points and Authorities in
Support of Motion to Strike

1    Novartis does not, of course, either diagnose children with ADD/ADHD or prescribe

2  Ritalin® to patients of any age, and plaintiff's Complaint does not assert otherwise.  The actual

3  prescription of medications is the exclusive province of the physician, acting as a learned

4  intermediary between the manufacturer and the patient.

5  **The Current Lawsuit**

6    Plaintiff's present Complaint alleges that Novartis and the other defendants have violated

7  the California Consumer Legal Remedies Act (CLRA), Cal. Code Civ. Proc. § 1750 et seq.

8  (Count I) and the Unfair Competition Act (UCL), Cal. Bus. & Prof. Code §§ 17200 and 17500

9  (Counts II and III).  As to Count I, plaintiff purports to act on behalf of a class of "all California

10  residents who purchased and/or ingested the drug Ritalin."  Complaint ¶¶ 4, 31.  As to Counts II

11  and III, plaintiff purports to act as a private attorney general on behalf of the general public of

12  California.  Complaint ¶¶ 5, 47, 51.

13    Plaintiff's factual claims against Novartis center on Novartis's supposed participation

14  with the APA in the "creation" of ADD and ADHD and the establishment of the diagnostic

15  criteria for the conditions found in the DSM.  For example, plaintiff's Complaint alleges:

16    15. Ciba/Novartis, in combination with the defendant doctors and the American
    Psychiatric Association (APA), planned, conspired, and colluded to create, develop,
17    promote, and confirm the diagnoses of Attention Deficit Disorder (ADD) and Attention
    Deficit Hyperactivity Disorder (ADHD) in a highly successful effort to increase the
18    market for its product Ritalin®.  Due to the concerted efforts of these parties, Attention
    Deficit Disorder was first listed in the Diagnostic and Statistical Manual of Mental
19    Disorders (DSM) in 1980.  The DSM recognized ADHD as "diagnosis" [sic] in 1987.

20                                *    *    *

21    17. In addition to its actions and involvement with the creation of the ADD and
    ADHD diagnoses, Ciba/Novartis took steps to promote and dramatically increase the
22    sales of Ritalin® by way of the following:

23      (a) actively promoting and supporting the concept that a significant percentage of
      children suffer from a "disease" which required narcotic treatment/therapy;
24
      (b) actively promoting Ritalin® as the "drug of choice" to treat children
25      diagnosed with ADD and ADHD;

26      (c) actively supporting groups such as Defendant CHADD, both financially and
      with other means, so that such organizations would promote and support (as a
27      supposed neutral party) the ever–increasing implementation of the ADD/ADHD
      diagnosis as well as directly increasing Ritalin® sales;

28

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

2.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1    (d) distributing misleading sales and promotional literature to parents, schools, or
     other interested persons in a successful effort to further increase the number of
2    diagnoses and the number of persons prescribed Ritalin®.

3    Complaint ¶¶ 15, 17; see also Complaint ¶¶ 28(f), 30.

4    Plaintiff also alleges that Novartis's promotional literature concerning ADD/ADHD and

5    the prescription of Ritalin® fails to provide adequate information to consumers about side effects

6    of the drug, Complaint ¶¶ 18-19, and fails to advise consumers "that Ritalin® usage would not

7    improve academic performance and/or have any long-term effect on the symptoms associated

8    with ADD and/or ADHD." Complaint ¶ 20.

9                                      **ARGUMENT**

10   This Court should strike all of plaintiff's claims against Novartis pursuant to California's

11   anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, Cal. Code Civ. Proc.

12   § 425.16. Plaintiff's claims against Novartis arise out of Novartis's claimed participation in the

13   public discussion of the identification of and development of diagnostic criteria for the serious

14   medical conditions of ADD and ADHD. The anti-SLAPP statute protects just such conduct from

15   unsupported attacks like plaintiff's here. This Court has noted:

16       To ensure that participation in public debate is not "chilled," the anti-SLAPP
         statute establishes a procedure for early dismissal of meritless lawsuits against public
17       speech.

18   Metabolife Int'l, Inc. v. Wornick, 72 F. Supp. 2d 1160, 1165 (S.D. Cal. 1999). In the

19   present case, both the context of the action and the complete lack of any legal or factual support

20   for plaintiff's claims compel such early dismissal.

21   To analyze plaintiff's claims under the anti-SLAPP statute, the Court must engage in a

22   two-step process. First, the Court must evaluate whether the alleged Novartis conduct on which

23   plaintiff bases his claims against the company fall within the protection of the statute. Cal. Code

24   Civ. Proc. § 425.16(b)(1); Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 971 (9th

25   Cir. 1999). Once that protection is demonstrated, the burden shifts to plaintiff, and the Court

26   must determine whether plaintiff has established a probability that he will succeed on both the

27   legal and factual merits of his claims. Id. Novartis will address these two steps in turn.

28

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

3.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

I.    **CALIFORNIA'S ANTI-SLAPP STATUTE AFFORDS NOVARTIS PROTECTION**
      **AGAINST PLAINTIFF'S CLAIMS**

Plaintiff's claims against Novartis here fall squarely within both the language and the spirit of California's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute. Plaintiff's claims against Novartis arise directly out of the company's protected speech concerning what plaintiff himself recognizes is a serious issue of public interest concerning the health of the country's children: the diagnosis and treatment of ADD and ADHD. Moreover, both the circumstances of the present litigation and the history of the legal assault on Ritalin® by these plaintiff's attorneys demonstrate that the present suit is just one more effort to produce through harassment and innuendo a result that they cannot achieve through reasoned scientific consensus.

A.    **Plaintiff's Claims Against Novartis Arise From Novartis's Acts in**
      **Furtherance of its Rights of Free Speech**

California's anti-SLAPP statute establishes the standard that plaintiff must meet before the Court may allow this action to proceed. Cal. Code Civ. Proc. § 425.16(b)(1) provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

The acts protected by this provision include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law;

> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;

> (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e). Under the Erie doctrine, this federal court must apply

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

4.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1    the protections afforded by the anti-SLAPP statute to plaintiff's claims, all of which rest on

2    California state law. See, e.g., Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972

3    (9th Cir. 1999); Nicosia v. DeRooy, 72 F. Supp. 2d 1093, 1110 n.10 (N.D. Cal. 1999) (citing

4    Newsham).

5        By its own terms, the anti-SLAPP statute is to be "construed broadly." Cal. Code Civ.

6    Proc. § 425.16(a). The statute provides protection against any suit "based on . . . any statement

7    made in a public forum on a matter of public interest, or any 'conduct in furtherance of the

8    exercise of the constitutional right . . . of free speech in connection with a public issue or an issue

9    of public interest.'" Rogers v. Home Shopping Network, 57 F. Supp. 2d 973, 976 (C.D. Cal.

10   1999). It is not limited to tort actions. Church of Scientology v. Wollersheim, 49 Cal. Rptr. 2d

11   620, 634 (Cal. Ct. App. 1996).

12       The fact that a speaker may have a financial or commercial interest in the subject matter

13   of the speech does not deprive the speaker of the statute's protection. See, e.g., DuPont-Merck

14   Pharm. Co. v. Superior Court, 92 Cal. Rptr. 2d 755 (Cal. Ct. App. 2000) (applying anti-SLAPP

15   statute to protect pharmaceutical company engaged in lobbying, advertising, marketing and

16   public relations activities concerning generic equivalents of its drug); Ludwig v. Superior Court,

17   37 Cal. App. 4th 8, 15 (1995) (holding that anti-SLAPP statute "is appropriately applied to

18   litigation involving conduct by a defendant which was directed to obtaining a financial

19   advantage"). Moreover, only the issue under discussion need be of public interest; the activities

20   on which the claims are based need not be public for the anti-SLAPP statute to apply, and in fact

21   the statute protects even private conversations. See, e.g., Macias v. Hartwell, 55 Cal. App. 4th

22   669, 674 (1997) ("[p]rivate conversations . . . would also be protected") (citations omitted);

23   Bradbury v. Superior Court, 49 Cal. App. 4th 1108, 1117 (1996) (same); Averill v. Superior

24   Court, 42 Cal. App. 4th 1170, 1175-76 (1996).

25       Novartis may meet its initial burden by showing that the claimed conduct giving rise to

26   the action falls within any one of the four categories in subdivision (e). See, e.g., Braun v.

27   Chronicle Publ'g Co., 52 Cal. App. 4th 1036, 1042-43 (1997). Novartis need not show that

28   every act or course of conduct plaintiff alleges was specifically in furtherance of petition or free

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

5.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1  speech rights, merely that the purported cause of action arises from any act in furtherance of

2  those rights.  Cal. Code Civ. Proc. § 425.16(b)(1).

3          Turning to the present case, even the most cursory examination of plaintiff's claims

4  against Novartis demonstrates that those claims arise from plaintiff's allegations concerning

5  Novartis's comments and communications about an important issue of public health, and thus

6  fall within the protection of the statute.  Reduced to their essentials, plaintiff's claims against

7  Novartis rest on (1) Novartis's contributions to the debate in the medical community concerning

8  the identification of ADD/ADHD as a disorder and the proper criteria for its diagnosis, and (2)

9  Novartis's subsequent communications with parents, educators, doctors and the public

10  concerning the treatment of the conditions with Ritalin®.  Both of these categories clearly

11  involve Novartis's speech.

12          More specifically, each of the individual acts of which plaintiff accuses Novartis relates

13  directly to Novartis's protected speech.  Plaintiff phrases virtually all of his characterizations of

14  Novartis's conduct specifically in terms of speech and communication.  These include

15  accusations that Novartis was involved in "promoting" and "supporting" the concept of

16  ADD/ADHD and the use of Ritalin® as treatment, Complaint ¶¶ 14, 15, 17(a) & (b), 18, 21, 22,

17  25, 28(a) & (b), 30, 35(a)(i) & (ii), 44(a) & (b), distributing sales and promotional literature

18  concerning ADD/ADHD and Ritalin®, Complaint ¶¶ 17(c), 18, 28(c), 35(a)(iii), 44(c), failing in

19  its communications with the public to provide information concerning Ritalin®'s side effects,

20  Complaint ¶¶ 18(d), 19, 28(d), 29, 35(a)(iv) & (b), 44(d), misrepresenting of the efficacy of

21  Ritalin®, Complaint ¶¶ 20, 28(e), 35(a)(v), 44(e), and "facilitating" the creation of the ADD and

22  ADHD diagnoses in the DSM, Complaint ¶¶ 21, 28(f), 35(a)(vi), 44(f).

23          Plaintiff likewise cannot reasonably deny that the speech and other communications by

24  Novartis of which he complains concerned both a public issue and an issue of public interest.

25  See Cal. Code Civ. Proc. § 425.16(e)(3) & (4).  The scope of plaintiff's own Complaint and its

26  putative class definition demonstrate that plaintiff believes the issues he has raised to be of

27  considerable importance to the public.  Plaintiff himself describes his claims as concerning "[a]n

28  important public interest."  Complaint ¶ 39.  Moreover, plaintiff purports to represent a class

ARTER & HADDEN LLP
402 West Broadway
6ᵗʰ Floor
San Diego, California
92101-8504

8710.1
66041\06019

6.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1   under the CLRA that numbers in the thousands "at a minimum," Complaint ¶ 34, and views the

2   issue of the existence of ADD and ADHD and the propriety of the DSM criteria as so significant

3   that he needs to represent the entire general public of California in prosecuting his UCL claims.

4   Complaint ¶¶ 5, 47, 51.

5          Courts have recognized under similar circumstances that such characterizations by a

6   plaintiff effectively establish that the subject of a claim is one of "public interest" under the anti-

7   SLAPP statute.  This conclusion is perhaps most evident in <u>DuPont-Merck Pharmaceutical Co. v.</u>

8   <u>Superior Court</u>, 92 Cal. Rptr. 2d 755 (Cal. Ct. App. 2000), a case remarkably similar to the

9   present case.  In <u>DuPont-Merck</u>, a putative class representative sued a pharmaceutical company

10  under Cal. Code Civ. Proc. §1750 and Cal. Bus. & Prof. Code § 17500 (the same statutes

11  plaintiff invokes here) based on the company's lobbying, advertising, marketing and public

12  relations activity concerning competing generic versions of its drug Coumadin.  In discussing the

13  defendant's motion to strike under the anti-SLAPP statute, the California Court of Appeals

14  addressed the "public issue" requirement of the statute:

15          [A]n inquiry must be made whether the issue of the equivalence of Coumadin and
           its generic counterpart pertains to "a public issue or an issue of public interest."
16         We find the answer to this question  in the first amended complaint.  Plaintiffs
           allege:  "More than 1.8 million Americans have purchased Coumadin, an anti-
17         coagulant medication, for the prevention and treatment of blood clots that can lead
           to life-threatening conditions such as stroke and pulmonary embolism."  Both the
18         number of persons allegedly affected and the seriousness of the conditions treated
           establishes the issue as one of public interest.
19

20  <u>Id.</u> at 759 (holding plaintiff's claims are of type described in statute).

21          Similarly here, in light of his own allegations, plaintiff can scarcely deny that Novartis's

22  alleged conduct pertains to "public issue or an issue of public interest" and thus falls within the

23  scope of the anti-SLAPP statute.  Novartis has met its burden of demonstrating that plaintiff's

24  claim arises from Novartis's speech concerning issues of public interest, and thus comes within

25  the protection of the anti-SLAPP statute.

26  **B.     Plaintiff's Suit Has Other Indicia of a SLAPP Suit**

27          Not only does plaintiff's Complaint fall within the letter of the anti-SLAPP statute, the

28  present Complaint represents just the type of meritless, harassing litigation against which the

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

7.

Case No. oo-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1    statute was intended to protect. The case has a number of features that demonstrate this improper

2    purpose.

3           First of all, plaintiff is effectively asking this Court to unilaterally alter the way doctors in

4    California practice medicine. Plaintiff obviously disagrees with the current DSM standard for

5    ADD/ADHD and the criteria for the prescription of Ritalin®. Plaintiff is of course entitled to

6    hold that opinion. He is not, however, entitled to force that opinion on every doctor in the state

7    of California using this lawsuit as a vehicle. There are ample avenues to present such divergent

8    opinions for consideration and action by qualified professionals. For example, the FDA has a

9    petition process that a private party may employ if the party believes that a particular FDA-

10   approved indication for a drug should be revoked or amended. See 21 C.F.R. § 10.25 (2000)

11   ("Any interested person may petition the Commissioner to issue, amend, or revoke a regulation

12   or order, or to take or refrain from taking any other form of administrative action."); 21 C.F.R.

13   § 30 (2000) (governing "Citizen Petitions"). Instead of employing such procedures, however,

14   plaintiff is asking this Court to override the long-established and considered judgment of both

15   professional and governmental bodies and to effectively preclude both the diagnosis of

16   ADD/ADHD and the prescription of Ritalin® for treatment, as practiced by hundreds or

17   thousands of California physicians on a daily basis.

18          The medical diagnosis of a child and the decisions about the child's treatment should be

19   made by the parents and the doctor, not by courts and juries, and certainly not by class action

20   attorneys. Plaintiff's attempt to usurp those decisions through litigation, instead of advancing his

21   views in a more appropriate forum, demonstrates the improper purpose of this lawsuit.

22          Perhaps one of the strongest indications that this suit not only will hamper informed

23   debate of these public health issues, but was intended to do so, is the inclusion as a defendant of

24   CHADD, a nonprofit support group for families coping with ADD and ADHD. As noted in

25   CHADD's own Rule 9(b) motion, plaintiff's Complaint makes virtually no allegations against

26   CHADD other than the claim that CHADD accepted monetary support from Novartis.

27   Moreover, plaintiff asks the Court to certify a class that would effectively be suing itself,

28   inasmuch as all or nearly all of CHADD's California members would be encompassed by the

ARTER & HADDEN LLP
402 West Broadway
8th Floor
San Diego, California
92101-8504

8710.1
66041\06019

8.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1   proposed class definition.  These features strongly suggest that plaintiff is suing not because of

2   any real grievance, but simply to impose financial hardship on those who disagree with

3   plaintiff's indictment of the diagnostic criteria for ADD/ADHD and of Ritalin®.

4          The Court may also look at the history of particular litigation and the existence of

5   multiple suits in evaluating an anti-SLAPP motion.  E.g., Church of Scientology v. Wollersheim,

6   49 Cal. Rptr. 2d 620, 632-33 (Cal. Ct. App. 1996).  Here, these same plaintiff's attorneys have

7   commenced multiple class actions in multiple states with classes that in fact overlap.  See, e.g.,

8   Complaint in Hernandez v. Ciba-Geigy Corp. USA (Texas action brought by many of same

9   plaintiff's attorneys alleging nationwide class of Ritalin® purchasers) (attached as Exhibit 2 to

10  Request for Judicial Notice).

11         The Court should also be aware that this current group of class actions represents the

12  second wave of legal assaults on Ritalin®.  The first wave, brought in the late 1980s and early

13  1990s by at least one of the same attorneys involved in the present case and supported by an arm

14  of the Church of Scientology, made the same type of baseless allegations concerning fraud and

15  conspiracy in the preparation of the DSM that plaintiff makes here.  E.g., Complaint in Parker v.

16  American Psychiatric Ass'n, ¶¶ 38-43 (Exhibit 1 to Request for Judicial Notice) (signed by

17  present plaintiff's attorney John P. Coale, and claiming that various individuals and the APA

18  "purposefully" made the ADHD criteria broad and vague to include as many children as

19  possible); "Ritalin Revisited," Indianapolis Star (Aug. 6, 1991) (noting national anti-Ritalin®

20  campaign by Citizens Commission of Human Rights (founded by Church of Scientology),

21  including legal assistance in lawsuits brought by plaintiff's attorney Coale) (attached as Exhibit

22  B to Drury Declaration).

23         The character and intent of that first, remarkably similar wave of attacks on Ritalin® is

24  instructive in examining the present litigation.  According to contemporaneous news accounts,

25  John Coale, lead attorney in the first wave of Ritalin® litigation and one of plaintiff's attorneys

26  here, stated his purpose in the earlier litigation with little ambiguity:

27             Lawyer John Coale said that the action here [a medical malpractice suit in
              Washington] will be followed by other suits, including class action suits, against
28            doctors and school districts around the country who use Ritalin on children.

ARTER & HADDEN LLP
402 West Broadway
6ᵗʰ Floor
San Diego, California
92101-8504

8710.1
66041\06019

9.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

["

1   wave of Ritalin® litigation had very clear and well-documented real world effects, undoubtedly

2   just the effects that the suits' backers intended.  Reacting as human beings do, concerned parents

3   became reluctant to allow their children to use Ritalin®, fearful of alleged side effects, and

4   school officials became hesitant even to refer students in need for medical evaluation.  See

5   "Effect of a Media Blitz and a Threatened Lawsuit on Stimulant Treatment," 268 J. Am. Med.

6   Ass'n 1004 (Aug. 26, 1992) (noting strong circumstantial evidence connecting decline in

7   Ritalin® prescriptions in Baltimore area to anti-Ritalin® media blitz and threatened lawsuit)

8   (attached as Exhibit H to Drury Declaration); "Group's Attack on Ritalin omits facts about

9   drug's usefulness, doctors say," Minneapolis Star Tribune (Oct. 4, 1987) (noting chilling effect

10  of lawsuits on whether doctors will "dare to do what they believe is the right thing") (attached as

11  Exhibit I to Drury Declaration).

12       This Court should not allow plaintiff and the backers of this litigation once again to

13  accomplish through innuendo what reason, science and medicine will not support.  The case

14  before the Court is just the type of suit aimed at the intimidation of informed public debate that

15  the anti-SLAPP statute intends to foreclose at the outset.  Plaintiff's claims are subject to the

16  anti-SLAPP statute, and this Court should require plaintiff to establish a probability that he can

17  succeed on the merits before permitting this case to proceed further.

18  II.    **PLAINTIFF CANNOT ESTABLISH A PROBABILITY THAT HE CAN**

19         **PREVAIL ON HIS CLAIMS.**

20       Because plaintiff's claims against Novartis arise out of Novartis's speech and

21  communications concerning the public health issues of ADD/ADHD and the use of Ritalin®, the

22  burden shifts to plaintiff to establish that he will probably succeed on those claims.  This Court

23  has described the plaintiff's burden as follows:

24           Once the defendant establishes *prima facie* that the statute applies, the
             plaintiff must show a "reasonable probability" of prevailing on its claims.  See
25           Wilcox v. Superior Court, 27 Cal. App. 4th 809, 824-25, 33 Cal. Rptr. 2d 446
             (1994); Cal. Civ. Proc. Code § 425.16(b).  Plaintiff must demonstrate that "the
26           Complaint is legally sufficient and supported by a *prima facie* showing of facts to
             sustain a favorable judgment if the evidence submitted by the plaintiff is
27           credited." . . . The defendant's anti-SLAPP motion should be granted, therefore,
             when the plaintiff presents an insufficient legal basis for the claims or "when no
28           evidence of sufficient substantiality exists to support a judgment for the plaintiff."

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

11.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1                        <u>Wilcox</u>, 27 Cal. App. 4th at 828, 33 Cal. Rptr. 2nd 446 (<u>citing</u> <u>Carson v. Facilities</u>
                      <u>Dev. Co.</u>, 36 Cal. 3rd 830, 838-39, 206 Cal. Rptr. 136, 686 P.2d 656 (1984)).

2

3  <u>Metabolife Int'l, Inc. v. Wornick</u>, 72 F. Supp. 2d 1160, 1165 (S.D. Cal. 1999).

4          A complaint may be dismissed under the anti-SLAPP statute either because the claims it

5  asserts are legally insufficient or because, assuming the claims are legally sufficient, the plaintiff

6  cannot produce sufficient admissible evidence to support them. <u>E.g.</u>, <u>Rogers v. Home Shopping</u>

7  <u>Network</u>, 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999). In the present case, plaintiff cannot

8  establish a probability of prevailing either legally or factually.

9         A.      **Plaintiff Cannot Establish a Sufficient Legal Basis for His Claims**

10          Plaintiff cannot establish a probability that he will prevail on the legal theories he urges in

11  support of his claims. A claim is subject to being stricken under § 425.16 if it has an insufficient

12  legal basis. <u>E.g.</u>, <u>Metabolife Int'l, Inc. v. Wornick</u>, 72 F. Supp. 2d 1160, 1165 (S.D. Cal. 1999).

13                    1.      **Plaintiff cannot establish a sufficient legal theory for his claims**
14                           **concerning the creation of the ADD/ADHD diagnosis and DSM**
                         **diagnostic criteria.**

15         First, as discussed in detail in the memorandum in support of Novartis's pending Rule

16  9(b) motion, plaintiff has failed to plead his claims, all of which sound in fraud, with the

17  particularity required by Fed. R. Civ. P. 9(b). Rule 9(b), of course, aims in part at the same goal

18  as the anti-SLAPP statute: the early dismissal of unfounded and harassing claims. <u>See</u>

19  <u>Newsham v. Lockheed Missiles & Space Co.</u>, 190 F.3d 963, 972 (9th Cir. 1999) ("the Anti-

20  SLAPP statute and the federal rules do, in some respects, serve similar purposes, namely the

21  expeditious weeding out of meritless claims"). Because plaintiff's claims are insufficient as a

22  matter of law under the particularity requirements of Rule 9(b), it necessarily follows that

23  plaintiff cannot demonstrate a probability of success based on such a legally insufficient

24  complaint. He thus cannot sustain his burden and cannot overcome the protections afforded by

25  the anti-SLAPP statute. Moreover, although courts will frequently permit a plaintiff to replead in

26  the face of a Rule 9(b) motion, <u>e.g.</u>, <u>Pegasus Holdings v. Veterinary Centers of Am.</u>, 38 F. Supp.

27  2d 1158, 1166 (C.D. Cal. 1998), the anti-SLAPP statute is much more strict. Section 425.16

28  requires the Court to strike the complaint unless plaintiff can demonstrate, there and then in the

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

12.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1   context of the motion, a probability of success both legally and factually.  See Nicosia v.

2   DeRooy, 72 F. Supp. 2d 1093, 1110-11 (N.D. Cal. 1999).

3          Moreover, what little can be gleaned from plaintiff's Complaint concerning his supposed

4   fraud and conspiracy theories does not support a legal entitlement to relief under the statutes on

5   which plaintiff relies, the CLRA and the UCL.  Stripped of its inflammatory characterizations,

6   plaintiff's Complaint essentially bases its fraud and conspiracy claims on the allegation that

7   Novartis contributed information and opinions as part of the APA's process of drafting the

8   various DSM criteria for ADD/ADHD (and its predecessor designations) over the years.

9          Although both the CLRA and the UCL are broad in scope, they are not without limit.

10  Novartis respectfully submits that if a company makes information available to a respected

11  psychiatric organization charged with developing criteria for the diagnosis of a serious medical

12  condition, and those criteria reflect prevailing medical opinion, the company's conduct is not

13  actionable under either the Consumer Legal Remedies Act or the Unfair Competition Act.

14  Plaintiff cannot create a tenable legal theory based on such an allegation merely by

15  characterizing the alleged acts as "conspiring" and "colluding."  See, e.g., Metabolife, 72 F.

16  Supp. 2d at 1171 n.13  (holding that character of interviewee's statement, "public comment on

17  the scientific controversy," is non-actionable First Amendment speech).

18         Finally, plaintiff cannot establish a probability of prevailing on the merits of his claims

19  because the relevant statutes of limitation bar those claims as a matter of law.  The Consumer

20  Legal Remedies Act requires that an action be commenced "not more than three years from the

21  date of the commission" of the act on which the action is based.  Cal. Code Civ. Proc. §1783.

22  Plaintiff's claims under the Unfair Competition Law must be brought within "four years after the

23  cause of action accrued."  Cal. Bus. & Prof. Code. §17208.  However, the conduct on which

24  plaintiff bases his claims, the supposed fraud and conspiracy concerning the diagnostic criteria

25  for ADD/ADHD, necessarily dates back at least to the last revision in the DSM, which occurred

26  in 1994.  See DSM-IV (Exhibit V to Drury Declaration).  Plaintiff thus commenced this action

27  well beyond both the applicable limitation periods.

28

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

13.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1    Plaintiff's Complaint offers no explanation of his delay in bringing this action, and pleads

2    no facts that might be argued to toll the running of these statutes. As a consequence, all of

3    plaintiff's claims based on the "creation" of the ADD/ADHD diagnosis and the establishment of

4    the DSM's diagnostic criteria are barred as a matter of law as untimely.

5    In sum, even assuming arguendo that the facts alleged by plaintiff are true, plaintiff

6    cannot sustain his burden of demonstrating a probability of prevailing on these legal theories and

7    in light of the applicable statutes of limitation. The Court should dismiss plaintiff's claim.

8              2.    **Plaintiff cannot establish a sufficient legal theory for his claims**
                     **concerning the side effects of Ritalin**

9

10   Plaintiff also asserts an entitlement to recovery based on his claim that Novartis "failed to

11   adequately address or provide adequate information to consumer, doctors, and/or schools

12   concerning the many significant hazards of methylphenidate use and prescription." Complaint

13   ¶¶ 18, 28(d), 35(a)(iv), 44(d). Again, assuming purely for the sake of argument that plaintiff's

14   factual allegation is correct, plaintiff must still establish that such an omission somehow entitles

15   it to relief under some recognized legal theory. If plaintiff had been injured and were asserting a

16   standard product liability theory such as negligence or strict liability, such a claim for relief

17   might be viable. <u>See, e.g.</u>, <u>Livingston v. Marie Callender's, Inc.</u>, 85 Cal Rptr 2d 528, 530-33

18   (Cal. Ct. App. 1999) (generally discussing California law on negligent and strict-liability failure-

19   to-warn theories). Plaintiff does not assert such theories, however, and in fact does not allege

20   that <u>any</u> member of the putative class has actually suffered any of the "significant hazards"

21   plaintiff alleges.

22   Instead, plaintiff has framed his Complaint in terms of statutes addressing purely

23   economic injury under the CLRA and the UCL. To avoid dismissal, plaintiff must establish that

24   he and the class he purports to represent have somehow suffered an injury that is legally

25   cognizable under these statutes merely by being inadequately informed concerning risks that

26   never affected any of them. Novartis respectfully submits that the statutes on which plaintiff

27   relies cannot legally sustain such a claim for damages, and plaintiff therefore cannot demonstrate

28

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

14.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1  a likelihood of prevailing on these claims.[2]

2        **B.   Plaintiff Cannot Establish a Sufficient Factual Basis for His Claims**

3        Even if plaintiff's legal theories were tenable as pled, plaintiff nevertheless cannot

4  establish a probability of prevailing on his claims because he cannot produce admissible

5  evidence sufficient to support the supposed facts underlying those claims.  In order to

6  successfully resist dismissal under the anti-SLAPP statute, plaintiff must establish his *prima*

7  *facie* case with competent and admissible evidence.  He cannot simply rely on the allegations in

8  the pleadings, but must present independent evidence to establish a *prima facie* tort.  Metabolife

9  Int'l, Inc. v. Wornick, 72 F. Supp. 2d 1160, 1165-66 (S.D. Cal. 1999); see also Evans v. Unkow,

10 45 Cal. Rptr. 2d 624 (Cal. Ct. App. 1995) (holding plaintiff cannot rely on averments "on

11 information and belief").  Where, as here, a plaintiff will need to present expert evidence to

12 support his various medical and scientific assertions, that evidence must be admissible under

13 Fed. R. Evid. 702 and must comply with the standards set forth in Daubert v. Merrell Dow

14 Pharm., Inc., 509 U.S. 579 (1993).  See Metabolife, 72 F. Supp. 2d at 166-68 (rejecting proffered

15 expert affidavits based on inadmissibility under Rule 702 and Daubert).

16       As noted above, regardless of what legal theories he employs, plaintiff's primary claims

17 against Novartis rely on his allegations concerning Novartis's alleged role in the creation of the

18 diagnosis of ADD/ADHD and the DSM diagnostic criteria for those conditions.  Unless plaintiff

19 can produce sufficient evidence to establish a probability of prevailing on this claim, the Court

20 must strike plaintiff's Complaint in its entirety.

21       Plaintiff cannot in fact produce such sufficient admissible evidence.  As noted in

22 Novartis's Rule 9(b) motion, the gravamen of plaintiff's Complaint vaguely appears to be a

23 claim that the disorders ADD and ADHD do not in fact exist at all, and that Novartis and the

24 APA conspired to "create" these medical conditions out of whole cloth.  See Complaint ¶ 15.  To

25 [2]  In addition, because plaintiff makes failure-to-warn claims under the CLRA and the UCL without ever claiming
26 that the "hazard" at issue ever actually occurred, it is not entirely clear what standard plaintiff contends the Court
should apply to determine the "adequacy" of a warning.  It is also highly questionable whether such an evaluation
27 could be made on a class-wide or state-wide rather than an individual basis.  In any event, the Court need not
resolve that issue in this motion because plaintiff cannot as a threshold matter establish a legal theory that supports a
28 cognizable injury.

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

15.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1  establish a probability of prevailing on such a claim, plaintiff must demonstrate through

2  admissible evidence, meeting Rule 702 and Daubert criteria, that ADD and ADHD do not in fact

3  exist.  Novartis respectfully suggests that the vast body of medical literature over the last century,

4  including the current views of the most respected and influential medical and scientific bodies in

5  the world,[3] indisputably forecloses any possibility that plaintiff can offer this Court any evidence

6  to the contrary that could possibly meet the Rule 702 and Daubert standards.

7       Recent developments suggest that plaintiff may in fact be backpedaling from his apparent

8  contention that ADD and ADHD do not exist.  For example, the federal court in the Southern

9  District of Texas recently conducted a hearing on defendants' Rule 9(b) motions in Hernandez v.

10  Ciba-Geigy Corp. USA, another Ritalin® case against these same three defendants in which

11  some of the present plaintiff's attorneys make factual allegations virtually identical to those

12  asserted here.  At that hearing, plaintiffs' attorney Charles Siegel, flanked by his co-counsel C.

13  Andrew Waters (one of plaintiff's attorneys here), openly acknowledged the existence of ADHD

14  and the efficacy of methylphenidate in treating it:

15       I think the thrust of our case is that we do not deny that there are a small--what we
         believe to be a smaller or much smaller number of children who have a serious

16

17  [3]   These authorities include the **American Medical Association,** Report 5 of the Council on Scientific Affairs,
     June 1997, *Diagnosis and Treatment of Attention Deficit Hyperactivity Disorder in School Age Children* ("ADHD is

18  one of the best-researched disorders in psychiatry, and the overall data on its validity are far more compelling than
     for most mental disorders and even for many medical conditions."), the **American Academy of Pediatrics,** *Clinical*

19  *Practice Guideline: Diagnosis and Evaluation of the Child With Attention-Deficit/Hyperactivity Disorder,* Pediatrics
     Vol. 105 No. 5 May 2000 ("[ADHD] is the most common neurobehavioral disorder of childhood.  ADHD is also

20  among the most prevalent chronic health conditions affecting school-aged children."), the **American Academy of
     Child and Adolescent Psychiatry,** *AACAP Official Action:  Practice Parameters for the Assessment and Treatment*

21  *of Children, Adolescents, and Adults with Attention-Deficit/Hyperactivity Disorder,* J. Am. Acad. Child Adolesc.
     Psychiatry Supplement, October 1997; 36(10): 855 –1215 ("Attention-deficit/hyperactivity disorder (ADHD) is one

22  of the most common psychiatric disorders of childhood and adolescence."), the **National Institute of Health,**
     *Diagnosis and Treatment of Attention Deficit Hyperactivity Disorder,* NIH Consensus Statement 1998 Nov. 16 – 18;

23  16(2): 1 – 37 ("[T]here is validity in the diagnosis of ADHD, defining a maladjustive cluster of characteristics."),
     the **US Department of Health and Human Services,** Green, Wong, Atkins, et al., *Diagnosis of Attention*

24  *Deficit/Hyperactivity Disorder.  Technical Review 3.*  Rockville, Md.: US Dept. of Health and Human Services,
     Agency for Health Care Policy and Research; 1999.  AHCPR publication 99 – 0050.  ("[ADHD] is one of the most

25  common childhood-onset psychiatric disorders. . ."), the **Surgeon General,** *Mental Health:  A Report of the
     Surgeon General, "Attention-Deficit/ Hypersensitivity Disorder"*

26  (www.surgeongeneral.gov/library/mentalhealth/chapter3/sec4.html) ("The disorder is found in all cultures, although
     prevalences differ; differences are thought to stem more from differences in diagnostic criteria than from differences

27  in presentation."), and the **MTA Cooperative Group,** *A 14-Month Randomized Clinical Trial of Treatment
     Strategies for Attention-Deficit/Hyperactivity Disorder,* 56 Arch. Gen Psychiatry 1073-1086 (1999). (Exhibits L-R

28  to Drury Declaration).

ARTER & HADDEN LLP
402 West Broadway
8th Floor
San Diego, California
92101-8504

8710.1
66041\06019

16.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1
> problem, a smaller subset of whom can be appropriately treated by
> methylphenidate. The thrust of our complaint is that the mass marketing, if you

2
> will, the mass prescription abroad in the land under a set of very, very broad and
> essentially manipulable criteria is the thing that we complain of, the conspiracy, if

3
> you will, to cause a result which is in their--which is in the psychiatrist's self-
> interest and Novartis self-interest, that is, mass prescriptions of Ritalin.

4

5 Hernandez Transcript at 38-39 (attached as Exhibit 3 to the Request for Judicial Notice).

6      Any adoption of that position by plaintiff here will not, however, solve his problem of

7 offering sufficient admissible evidence to avoid dismissal under the anti-SLAPP statute. On the

8 contrary, he will simply have traded one groundless assertion for another. If plaintiff adopts the

9 theory his attorneys advanced in Hernandez, he can then avoid dismissal only by establishing

10 through admissible evidence that the DSM criteria for ADD/ADHD do not in fact reflect the

11 rational consensus opinion of the many psychiatrists who participated in their composition.

12      Again, Novartis respectfully suggests that no such factual showing can be made.

13 Plaintiff's main problem is that the DSM diagnostic criteria are not a "fact" at all. They are a set

14 of informed opinions, arrived at through lengthy discussion and debate by knowledgeable

15 professionals. Even assuming for the sake of argument that the diagnosis and treatment of

16 ADD/ADHD were legitimately the subject of scientific controversy (as opposed to social

17 controversy), plaintiff cannot sustain a claim based on the DSM criteria. To prevail on such a

18 claim, plaintiff would need to demonstrate at the very least that the DSM criteria do not represent

19 a "rational interpretation" of the current data concerning ADD/ADHD, a very high threshold that

20 this Court has imposed before in this context. In using the anti-SLAPP statute to strike a

21 complaint challenging medical and scientific opinion in a recent defamation action, this Court

22 noted:

23
> [P]articularly in the context of scientific contribution to public health debates, the
> Court believes itself justified in applying the ["rational interpretation"] doctrine in

24
> this context. If the First Amendment provides heightened protection for rational
> comment on stereo speakers, it should also protect scientific comment on issues as

25
> important as public health. See Michael Kent Curtis, Monkey Trials: Science,
> Defamation, and the Supression of Dissent, 4 Wm. & Mary Bill Rts. J. 507, 582

26
> (1995) (arguing for [an] application of the "rational interpretation" doctrine to
> scientific comment against public figures).

27

28 Metabolife, 72 F. Supp. 2d at 1172 n.15. As discussed in detail in the APA's memorandum, the

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

17.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1  public interest dictates that scientific and medical debate is entitled to the highest protections that

2  the Constitution affords.  To overcome that protection, plaintiff must at the very least provide

3  this Court with admissible evidence that the DSM criteria does not represent even a "rational

4  interpretation" of the state of medical knowledge.  In light of the vast array of medical articles

5  supporting the DSM criteria and the broad acceptance and use of those criteria, both by respected

6  medical organizations and by individual practicing doctors (see note 3 above), Novartis submits

7  that plaintiff cannot meet that burden.

8        In addition, plaintiff cannot establish a probability of prevailing because he cannot offer

9  facts that would allow him to avoid the respective three- and four-year statutes of limitation that

10  apply to his claims.  See Cal. Code Civ. Proc. § 1783 (2000); Cal. Bus. & Prof. Code. § 17208

11  (2000).  Plaintiff cannot claim that the supposed "facts" underlying his allegations of fraud and

12  conspiracy were only recently discovered because his own attorney made virtually the same

13  allegations against the APA in the Parker lawsuit almost 13 years ago.  See Complaint in Parker

14  v. American Psychiatric Ass'n, ¶¶ 38-43 (Exhibit 1 to Request for Judicial Notice).  That

15  Complaint specifically alleges at ¶ 40:

16        The [DSM-III and DSM-III-R] criteria [for ADHD] were purposefully broad and
        vague to encompass an many children as possible to increase the patient base of
17        the psychiatric profession.

18        In the face of this earlier complaint, plaintiff cannot tenably argue that any fraud or

19  conspiracy in the composition of the DSM, assuming for the sake of argument that it existed, was

20  not known or reasonably knowable years before plaintiff commenced the present action.

21        In sum, plaintiff cannot produce sufficient evidence to establish a probability that he will

22  prevail on the merits of this action, and this Court should strike plaintiff's claims.

23  III.    **NOVARTIS IS ENTITLED TO RECOVER ITS COSTS AND ATTORNEY'S**

24        **FEES.**

25        Cal. Code Civ. Proc. § 425.16(c) states in a relevant part that "a prevailing defendant on a

26  special motion to strike shall be entitled to recover his or her attorneys' fees and costs."  Such

27  fees and costs are also available to a prevailing defendant on a successful special motion to strike

28  brought in federal court.  Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972-73

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

18.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike

1   (9th Cir. 1999). Novartis therefore respectfully requests that, should the Court grant Novartis's

2   motion, it also award Novartis its fees and costs in an amount to be determined following the

3   Court's ruling on this motion.

**CONCLUSION**

4

5      Application of California's anti-SLAPP statute is particularly appropriate here.

6   Plaintiff's complaint seeks to discourage from participation in the medical and scientific debate

7   of a public health issue three of the groups most knowledgeable and interested in the issue (an

8   association of doctors who treat ADD, an association of parents whose children suffer from

9   ADD, and the manufacturer of a product that treats ADD). Even more dangerously, plaintiff's

10   suit effectively seeks to alter the medical and scientific consensus reached as a result of that

11   debate by asking this Court to declare either that ADD does not exist or, if it does, that the DSM

12   criteria for its diagnosis are somehow wrong. For the reasons discussed above, Novartis urges

13   this Court to strike plaintiff's Complaint in its entirety pursuant to Cal. Code Civ. Proc. § 425.16,

14   and to award Novartis its costs and attorneys' fees incurred in preparing this motion.

15   DATED: November 17, 2000                    ARTER & HADDEN LLP

16

17

18                                    By:   _Michael Drury_____

19                                           Michael Drury
                                             Attorneys for Defendants
                                             Novartis Pharmaceuticals Corp. and
20                                           Ciba-Geigy Corp. USA

21

22

23

24

25

26

27

28

ARTER & HADDEN LLP
402 West Broadway
6th Floor
San Diego, California
92101-8504

8710.1
66041\06019

19.

Case No. 00-CV01839
Memorandum of Points and Authorities in
Support of Motion to Strike