USDC SCAN INDEX SHEET

















TKL   3/5/01   10:38

3:00-CV-01839   VESS V. CIBAGEIGY CORP USA

*125*

*AMDCMP.*

ORIGINAL

FILED

01 MAR -2  AM 9: 32

BY:                              DEPUTY

1  Donald F. Hildre; SBN 066188
   Thomas Haklar; SBN 169039
2  Peggy J. Reali; SBN 153102
   DOUGHERTY, HILDRE, DUDEK & HAKLAR
3  2550 Fifth Avenue, Suite 600
   San Diego, CA 92103
4  (619) 232-9131;  Fax (619) 232-7317

5  John P. Coale
   Julia W. McInerny
6  COALE COOLEY LIETZ McINERNY
   818 Connecticut Avenue, N.W., Suite 857
7  Washington, D.C. 20006
   (202) 887-4770; Fax (202) 887-4778

8
   Richard Scruggs
9  Sidney A. Backstrom
   Robin Reid Boswell
10 SCRUGGS, MILLETTE, BOZEMAN & DENT, PA
   P.O. Drawer 1425
11 Pascagoula, Mississippi 39568-1425
   (228) 762-6068; Fax (228) 762-1207

12
   Additional attorneys listed on signature page

13

14                  UNITED STATES DISTRICT COURT

15                 SOUTHERN DISTRICT OF CALIFORNIA

16

17 TODD D. VESS, a Minor, by DEBORAH VESS,   )   CASE NO. 00-CV-1839 - B
   his Guardian ad Litem, individually, on behalf of  )
18 those Similarly Situated and on behalf of the  )   FIRST AMENDED CLASS ACTION
                                               )    COMPLAINT FOR
19 General Public of the State of California,  )   VIOLATION OF THE CONSUMER
                                               )   LEGAL REMEDIES ACT
20      Plaintiffs,                            )   [CALIFORNIA CIVIL CODE  SECT.
                                               )   1750 et. seq. ]
21 v.                                          )
                                               )   and
22 CIBA-GEIGY CORP. USA; NOVARTIS              )
   PHARMACEUTICALS CORP.; CHILDREN             )   COMPLAINT FOR RESTITUTION
23 AND ADULTS WITH ATTENTION-DEFICIT/          )   AND INJUNCTIVE RELIEF UNDER
   HYPERACTIVITY DISORDER (CHADD);             )   CALIFORNIA BUSINESS AND
24 AMERICAN PSYCHIATRIC ASSOCIATION,           )   PROFESSIONS CODE  SECTION
   and DOES 1 through 100, inclusive,          )   17200 AND SECTION 17500
25                                             )
        Defendants.                            )   and
26                                             )
                                               )   DEMAND FOR JURY TRIAL
27                                             )

28

1    Individual and representative Plaintiff TODD D. VESS, by and through DEBORAH VESS as

2    his Guardian ad Litem, on behalf of the general public on behalf of those similarly situated, alleges on

3    personal knowledge those facts  which pertain to the named Plaintiff or to his attorneys and further

4    alleges on information and belief as follows:

5                                 **JURISDICTION AND VENUE**

6        1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332

7    because the amount in controversy exceeds Seventy-Five Thousand dollars ($75,000.00) and

8    because there is complete diversity of citizenship between plaintiff and all defendants.

9        2.      Venue is appropriate pursuant to 28 U.S.C. Section 1391.

10       3.      At all relevant times, Defendants have done and continue to do business in the State

11   of California and County of San Diego.  They have made contracts to be performed in whole or in

12   part in California.  Defendants' products have been manufactured, tested, sold, offered for sale,

13   supplied or placed in the stream of commerce in California.  In the course of  business,

14   Defendants  have materially participated with other Defendants in performing the acts described

15   above.  They have received and continue to receive substantial compensation and profits from the

16   sale of Ritalin in California and San Diego County as well as the sale and use of the diagnostic

17   criteria for ADD/ADHD.  Defendants have made material omissions and misrepresentations in

18   California.  The wrongful acts and conduct, in furtherance of a conspiracy, are the basis of the

19   claims that have occurred and continue to occur in California and San Diego County.

20                                        **PARTIES**

21   **A.     Plaintiff (and Those Similarly Situated)**

22       4.      TODD D. VESS, individually, through his Guardian ad Litem, DEBORAH VESS, is

23   a minor who resides in the State of California,  County of San Diego and County, and appears

24   individually with respect to all causes of action, and also appears on behalf of those individuals

25   similarly situated with respect to the First Cause of Action.

26   / / /

27   / / /

28   / / /

**B.    Plaintiff (and the General Public)**

5.    With respect to the Second and Third Causes of Action, plaintiff, a resident of the State of California, brings this action pursuant to California Business and Professions Code Section 17204, individually and  as a private attorney-general on behalf of the members of the general public of California.

6.    Plaintiff was prescribed, and purchased and ingested, the drug Ritalin in June, 1994, when he was nine years of age.

**C.    Defendants.**

7.    Defendant CIBA-GEIGY CORP. USA is a corporation with its principal place of business in New Jersey and its corporate headquarters in the State of New York.  It may be served through its registered agent in the state of California.  The Prentice-Hall Corporation System, Inc., 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.   This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

8.    Defendant NOVARTIS PHARMACEUTICALS CORP. is a corporation with its principal place of business and corporate headquarters in New Jersey.  It may be served through its registered agent in the State of California.  Corporation Service Company, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.  This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

9.    Defendant CHILDREN AND ADULTS WITH ATTENTION-DEFICIT / HYPERACTIVITY DISORDER (CHADD) is an unincorporated association with its principal office in Maryland.  It may be served by serving its registered agent in California.  Larry Komar, 1104 East Walnut Creek, Covina, California 91724.  This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

10.    Defendant AMERICAN PSYCHIATRIC ASSOCIATION is a nonprofit corporation with its principal place of business in Washington, D.C.  It may be served by serving its registered agent in California.  Paracorp Incorporated, 1130 K Street, Suite LL60, Sacramento, California  95814.  This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

1    11.    Plaintiff is informed and believes and thereon alleges that at all times herein

2 mentioned, the true names and capacities, whether individual, corporate, associate or otherwise of

3 defendants DOES 1 through 100, inclusive, are unknown at this time to plaintiff who therefore sues

4 said defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that

5 each of the defendants designated herein by such fictitious names were involved in the distribution,

6 manufacturing, promotion and/or sale of Ritalin, and were in some way  legally responsible for the

7 events and happenings herein referred to which were a legal cause and substantial factor in bringing

8 about injuries and damages to plaintiff as alleged.  Plaintiff will amend this complaint to allege the

9 true names and capacities of the DOE defendants when ascertained.

10                    **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

11    12.    Ritalin is a psycho stimulant drug.  It is the trade name for a pharmacological

12 substance known as methylphenidate.  Methylphenidate, and therefore Ritalin, are Class II or

13 Schedule II controlled substances under the Controlled Substance Act.  See 21 U.S.C. ?812; 21

14 C.F.R. 1308.12.

15    13.    From approximately 1955 through 1995, the exclusive or primary manufacturer and

16 supplier of Ritalin in this country was defendant Ciba-Geigy Corp., USA (Ciba).  In 1996, Ciba

17 merged with Sandoz Pharmaceuticals Corp. to become defendant Novartis Pharmaceutical Corp.

18 (Novartis).  Upon information and belief, Novartis is presently, and has been since 1996, the sole or

19 primary manufacturer and supplier of Ritalin in the United States.  Ciba, however, continues as a

20 separate corporate entity.  For ease of reference, defendants Ciba and Novartis are sometimes

21 referred to in this complaint as Ciba/Novartis.

22    14.    Ciba/Novartis has manufactured, marketed and sold Ritalin since approximately

23 1955.  The product was promoted, beginning in the 1960's, by Ciba as an antidepressant which

24 brightens moods and improves performance.  Defendant also claimed effectiveness for depression,

25 chronic fatigue and psychoneurosis.  From 1955 until the late 1970's, Ciba aggressively sought

26 applications and markets for Ritalin in an effort to boost sales and profits.

27 ///

28 ///

1      15.    Ciba/Novartis, in combination with the American Psychiatric Association (APA),

2   planned, conspired, and colluded to develop, promote, broaden and confirm the diagnoses of

3   Attention Deficit Disorder (ADD) and Attention Deficit Hyperactivity Disorder (ADHD) in a highly

4   successful effort to increase the market for its product Ritalin.  Previously recognized in a much

5   more narrow fashion and under another name, Attention Deficit Disorder was first listed in the

6   Diagnostic and Statistical Manual of Mental Disorders (DSM) in 1980.  ADD was further and

7   inappropriately broadened in 1987 when it became known as ADHD.

8      16.    Ciba/Novartis and APA maintained financial relationships, either directly, or through

9   agency of members of the relevant committees that constructed the DSM criteria for ADD and

10   ADHD  These relationships and their nature were not disclosed to the class.

11      17.    The DSM is currently and has been a widely used and disseminated compendium of

12   psychiatric diagnoses.  Listing of a diagnosis in the DSM provides an official-seeming, medical

13   imprimatur to a particular set of symptoms or behaviors that may, in fact, be entirely normal.  A

14   new official diagnosis in the DSM, however, generates vast numbers of new prescriptions, increased

15   insurance coverage, and great public attention.

16      18.    In 1980, the APA published a new diagnostic manual called the Diagnostic and

17   Statistical Manual, 3d edition.  The hallmark of this endeavor was the alleged scientific basis for the

18   diagnoses and the criteria by which those diagnoses were to be made.

19      19.    Although the manual set forth standards by which the diagnostic criteria were to be

20   judged as valid and therefore included in the manual, the diagnosis of ADD was included in the

21   manual despite failing to meet those standards.  In so doing, the APA fraudulently and falsely

22   claimed and represented that the diagnostic criteria for ADD was scientifically reliable.

23      20.    In an effort to cover up this fraud, the APA improperly clustered the data from tests

24   of the ADD diagnostic criteria with data supporting other unrelated conditions whose reliability was

25   established.  The intended and ultimate effect of such improper clustering was to  inappropriately

26   legitimize the unproven and arbitrary ADD diagnostic criteria.

27   / / /

28   / / /

5

21.    In addition to the above, the APA also purposefully and fraudulently failed to include the use of any objective criteria in the creation and promulgation of the ADD diagnostic criteria (despite there being overwhelming evidence supporting the inclusion of the same).

22.    In presenting the criteria in the guise of a scientific endeavor, APA misrepresented a fundamentally arbitrary set of criteria as a scientifically validated diagnostic set, misleading both clinicians, patients, the general public, and the class.

23.    These efforts by the APA, to improperly expand the diagnostic criteria for ADD are revealed in the current version of the DSM, the DSM IV-TR.  In it, for example, the APA added the diagnosis of ADHD "not otherwise specified" which allows for the diagnosis to be imposed on those who even fail to meet the general criteria.

24.    The inappropriate vagueness and breadth of the diagnostic criteria for ADD and ADHD has been critically noted by the American Academy of Pediatrics that, in a paper produced in connection with their 2000 annual meeting specifically referred to the "lack of definitive diagnostic criteria."  Likewise, the NIH (National Institutes of Health) in Consensus Development Conference Statement #58, noted that "an important research need is the investigation of standardized age and gender specific diagnostic criteria."

25.    In addition, in versions of the DSM after DSMIII –R the pretense of field testing was eliminated, and the lack of objective measurers was improperly continued.

26.    From the inception of the DSM, the APA has improperly failed to address or include dissenting opinion and failed to fully address or actually obscured the scientific literature that advances the position that the diagnosis of ADD is properly made only as a diagnosis of exclusion, a view emphasized by the American Academy of Child and Adolescent Psychiatry in their 1997 practice parameters for the diagnosis of ADHD  which prominently states: "By definition, the diagnosis of ADHD cannot be made if the symptoms occur exclusively in the presence of a pervasive developmental disorder, schizophrenia, or other psychotic disorder or if they are better accounted for by another psychiatric disorder." This view is similarly shared by  the AMA in its Council of Scientific Affairs,  Report 5, which says: "The goals of the actual examination of the child are to determine whether he or she meets the diagnostic criteria and to look for conditions

1    other than ADHD that might simulate it."

2       27.    In all editions of DSM and since the inception of the DSM, the APA has fraudulently

3    failed to disclose, through misrepresentations and omissions, the role of the drug industry and, in

4    particular, Novartis, in the creation, promulgation and revisions of the DSM or the financial

5    connection between its committee members and Ciba.

6       28.    Such a connection is clearly present.  One need only review the November 17, 2000

7    issue of Psychiatric News, the official publication of the APA, and in particular a statement by its

8    current president  who decries the  APA's dependence upon the drug industry stating "[The] APA

9    is overly-dependent on pharmaceutical companies. Approximately one third of APA's income is

10    derived from the pharmaceutical industry."

11       29.    Further, direct solicitations from the APA to drug companies have been customary.

12       30.    Ciba/Novartis deliberately, willfully, intentionally, and negligently failed to disclose

13    its financial relationship with the APA and CHADD when it knew that such information would be

14    important to those diagnosed with ADD/ADHD and those who were subsequently prescribed

15    Ritalin.

16       31.    In addition to its actions and involvement with the inappropriate broadening of the

17    ADD and ADHD diagnoses, Ciba/Novartis took steps to promote and dramatically increase the

18    sales of Ritalin by way of the following:

19            a.      Actively promoting and supporting the concept that a significant percentage

20                  of children suffer from a disease which required narcotic treatment/therapy;

21            b.      Actively promoting Ritalin as the drug of choice to treat children diagnosed

22                  with ADD and ADHD;

23            c.      Actively supporting groups such as Defendant CHADD and the APA, both

24                  financially and with other means, so that such organizations would promote

25                  and support (as a supposed neutral party) the ever-increasing implementation

26                  of the ADD/ADHD diagnosis as well as directly increasing Ritalin sales;

27    ///

28    ///

1    32.    As the DSM definitions were promulgated, publicized and progressively

2   reformulated to ever broaden the characterization of ADD/ADHD, there has been a corresponding

3   rise in the use of Ritalin. Such use has damaged the class economically, physically and emotionally.

4   *The Agency for Health Care Policy and Research (AHCPR)* in its Technical Report Number 3

5   referenced DSM III and DSM III-R as a "significant contributor" to the increased diagnosis rates of

6   ADHD.

7    33.    Ciba/Novartis while listing side effects on its package insert has failed to warn that

8   the full range of side effects has not yet been adequately studied.  It is noted  by the AHCPR

9   Technical Report Number 11 that "Studies are required to assess the severity of most adverse

10   effects associated with stimulant medication and to evaluate, explicitly, the tradeoff between

11   improvement in ADHD symptoms and signs and adverse effects."  and " However, data are

12   inadequate on the long-term effects and severity of the adverse effects of most interventions. No

13   comparative studies were identified with data on important adverse effects of interest, including

14   potential for abuse of stimulants . . ."

15    34.    Ciba/Novartis failed to disclose the limited effectiveness of its product and misled

16   clinicians and the public to believe that Ritalin would improve academic performance  and long-term

17   outcomes in those who took Ritalin and that improvement may be in spite of taking medication.

18   The AHCPR Technical Report Number 11 notes: "These studies show a trend to general

19   improvement over time regardless of treatment and support the need for long-term placebo-

20   controlled studies. MPH appears to reduce behavioral disturbance in ADHD children as long as it is

21   taken. However, there is no information on the reasons so many children discontinue medication.

22   The studies available provide little evidence for improvement in academic performance with

23   stimulants, even though MPH treatment appears to produce consistent behavior improvement."

24    35.    APA failed to disclose that although the DSM in its various editions refers to much

25   clinical literature on ADD/ADHD, almost all of this research is of poor quality.  The AHCPR

26   Technical Report Number 11 notes: "The small sample size of most studies limited their power to

27   detect meaningful clinically important differences among the interventions. Ninety-seven percent of

28   the reports of RCTs did not describe the method of randomization. Ninety-five percent did not

8

1  describe efforts to conceal allocation from the investigators who recruited the patients into the

2  study (e.g., allocation codes were obtained by telephone after a patient accepted to enter the study).

3  Eighty-seven percent did not describe the number of withdrawals and dropouts and the reasons for

4  such in each of the groups. These limitations increased the likelihood of biased results."

5        36.     Defendant CHADD (Children and Adults with Attention-Deficit/Hyperactivity

6  Disorder) is an unincorporated association formed in 1987 with a stated purpose of "representing

7  individuals with AD/HD, for education, advocacy and support." On its website, it alleges to be "the

8  leading non-profit organization for children and adults with AD/HD;" and notes that it is

9  continue[d] to be run by volunteers, with the support of a small national staff."

10        37.     Nowhere in its website does CHADD reveal that it has received significant if not life

11  sustaining contributions from CIBA. For example, CHADD does not disclose that it  received

12  $748,000 from Ciba/Novartis in the period 1991 to 1994 alone.  During the periods when CHADD

13  received funding from Ciba/Novartis, CHADD deliberately  attempted to increase the sales of

14  Ritalin, and to increase the supply of methylphenidate available in the United States, and to reduce

15  or eliminate laws and restrictions concerning the use of Ritalin and methylphenidate in the United

16  States, all at the request of CIBA upon information and belief, and obviously to the financial

17  benefit, of Ciba/Novartis.

18        38.     Ciba/Novartis made such financial contributions with the purpose of advertising and

19  promoting sales of Ritalin - an internationally controlled substance.  Ciba/Novartis has thus

20  repeatedly violated Article 10 of the United Nations Convention on Psychotropic Substances, 1019

21  U.N.T.S. 175 (1971).

22        39.     CHADD's activities nationwide have led to a significant increase in the amount of

23  Ritalin taken by school children and have directly resulted in enormous profits to Ciba/Novartis.  In

24  so doing, CHADD has damaged the class by over promoting a drug where none was needed.  In so

25  doing, CHADD has acted as an agent of, and/or has aided and abetted Ciba/Novartis in its efforts to

26  increase sales and earn additional profits from the sale of Ritalin.

27  / / /

28  / / /

1    40.    CHADD has distributed misinformation. This year it has been reported in the Journal

2  of the American Academy of Child and Adolescent Psychiatry that "Family associations, such as

3  Children and Adults With Attention Deficit Disorder (CHADD), Federation of Families, and

4  National Alliance for the Mentally Ill (NAMI), are not systematically connected to the research

5  community to ensure that dissemination of new information is rapid, efficient, and accurate."

6                                  **CO-CONSPIRATORS**

7    41.    Each Defendant is sued individually as a primary violator and as a co-conspirator.

8  The liability of each Defendant arises from each Defendant's agreement to commit unlawful acts

9  and the performance of those acts, in concert, to further the agreement. The conspiracy began as

10  early as the 1970s and continues to the present. Defendants each knowingly and willfully entered

11  into and pursued a common course of conduct, by agreement with the other Defendants and third

12  parties, to commit all or part of the unlawful acts alleged herein. Such unlawful acts were

13  committed intentionally, knowingly, maliciously and without legal justification or excuse.

14    42.    All Defendants conspired, combined and colluded to promote and dramatically

15  increase the sales of Ritalin by way of the following:

16          a.    Actively promoting and supporting the concept that a significant percentage

17                of children suffer from a ADD/ADHD which required narcotic

18                treatment/therapy;

19          b.    Facilitating the inappropriate broadening of new diagnostic criteria for

20                ADD/ADHD in the DSM.

21    43.    The interrelationship between Ciba/Novartis, the drug industry as a whole, and the

22  APA caused and contributed to the APA's assistance, support, aid, and collusion with

23  Ciba/Novartis that could be, and ultimately was, applied to a large percentage of children in the

24  United States, and for which the APA, in combination with other defendants, continued and

25  presently continue to promote the prescription, use and sale of Ritalin.

26  ///

27  ///

28  ///

## CLASS ACTION ALLEGATIONS

### By Plaintiff on Behalf of All Others Similarly Situated
(Relating to Count One - Violation of California Civil Code Section 1750 *et. seq.*)

44.    Plaintiff brings this Class action, individually and on behalf of others similarly situated, as a Class action pursuant to Federal Rule of Civil Procedure, Rule 23 and Section 1781 of the California Civil Code.  The Class which Plaintiffs seek to represent is:

The class shall be composed of all California residents who purchased and/or ingested the drug Ritalin as treatment for ADD/ADHD.

45.    Specifically excluded from the Plaintiff Class are Defendants herein, any entity in which any of the Defendants has a controlling interest, any officers, directors or employees of any of the Defendants and legal representatives, heirs, successors, and assignees of any of the Defendants.  Also excluded are any federal, state or local entities.

46.    This action is brought and may properly be maintained as a Class action pursuant to Federal Rule of Civil Procedure 23.  The community of interest in the litigation is well defined and the proposed Class is easily ascertainable.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of this provision.  In addition this action may be brought under California Civil Code Section 1781.

47.    Numerosity of the Class.  The Class is so numerous that the individual joinder of all Members is impractical under the circumstances of this case.  While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff believes that at a minimum, there are thousands of Class Members located throughout the State of California.

48.    Common Questions Predominate.  Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Members of the Class.  These common legal and factual questions arise from various  issues, which do not vary among Class Members:

a.    All Defendants conspired, combined and colluded to promote and dramatically increase the sales of Ritalin by way of the following:

///

i.   Actively promoting and supporting the concept that a significant percentage of children suffer from ADD/ADHD which required narcotic treatment/therapy;

ii.   Facilitating the inappropriate broadening of new diagnostic criteria for ADD/ADHD in the DSM.

b.   Despite information in the medical and scientific literature concerning these side effects of Ritalin use, Defendants failed in all respects to advise potential consumers, doctors, and/or schools, teachers or other interested parties of the nature and extent of such side effects.

c.   Furthermore, Defendant CHADD similarly failed to provide adequate information to interested parties concerning the nature and extent of potential side effects.

49.   Typicality of Claims.  Plaintiff's claims are typical of the claims of Members of the Class, all of whom have purchased and/or ingested the drug Ritalin as treatment for ADD/ADHD, which was manufactured, distributed, and marketed by Defendants.  Plaintiff and all Class Members have sustained, and will continue to sustain damages, injuries and irreparable harm arising out of Defendants' common course of conduct.

50.   Adequacy of Representation.  Plaintiff, by Deborah Vess, his Guardian ad Litem, will fairly and adequately protect the interest of Members of the Plaintiff Class.  Plaintiff resides in California and purchased and/or ingested Defendants' products for treatment of ADD/ADHD in California during the Class period.  Plaintiff is a representative Member of the Class, whose members are united by a common interest, and Plaintiff is an adequate representative since he has no interests that are adverse to the interests of absent Class Members.  Plaintiff has retained counsel who are both competent and experienced in the prosecution of complex consumer fraud, mass tort and class actions.  Plaintiff and his counsel intend to prosecute this action vigorously for the benefit of the Class.  Plaintiff and his counsel will fairly and adequately protect the interests of the Members of the Class.

/ / /

/ / /

1    51.    <u>Superiority and Substantial Benefit</u>.  A class action is superior to other available

2    methods for the fair and efficient adjudication of this litigation since individual litigation of Class

3    Members' claims is impractical.  Even if all Class Members could afford individual litigation, the

4    court system could not.  It would be unduly burdensome for the courts to adjudicate identical legal

5    and factual issues in hundreds of thousands of cases.  Individual litigation increases delay and

6    expense to all parties, and especially the court system, associated with the resolution of the complex

7    legal and factual issues of the case.  The prosecution of separate actions by the individual Members

8    of the Class would create a risk of inconsistent adjudications with respect to individual Class

9    Members, thus establishing incompatible standards of conduct for Defendants.  The prosecution of

10   separate actions would create a risk of adjudications that would be dispositive of the interests of the

11   other Class Members who are not parties to such adjudications, thus substantially impairing the

12   ability of such non-party Class Members to protect their interests.  Individual litigation of this case

13   presents a great potential for inconsistent or contradictory judgments.

14   52.    Class action treatment is a superior method of adjudication and provides a

15   substantial benefit to the litigants and the courts since it presents far fewer management difficulties

16   and provides the benefits of a single adjudication and comprehensive supervision by a single court.

17   Furthermore, as the damages suffered by each individual Member of the Class may be relatively

18   small, the expenses and burden of individual litigation would make it difficult or impossible for

19   individual Members of the Class to redress the wrongs done to them.  An important public interest

20   will be served by addressing the matter as a class action.  Notice of the pendency and of any

21   resolution of this class action can be provided to Class Members by publication and broadcast.

22   53.    Furthermore, Plaintiff's claims are certifiable as a Class action because Defendants

23   have acted or refused to act on grounds generally applicable to the Class, thereby making

24   appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a

25   whole.

26   / / /

27   / / /

28   / / /

54.     Plaintiff, by Deborah Vess, his Guardian ad Litem, is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Accordingly, the proposed Class fulfills the certification criteria of California law and certification of the above-defined Class is appropriate under one or more of the provisions of California law.

## FIRST CAUSE OF ACTION

**CLASS ACTION FOR VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**
**[California Civil Code Section 1750, et seq.]**
**(By All Plaintiffs Against All Defendants)**

55.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

56.     California Civil Code Section 1770 provides, in relevant part:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: . . .
>
> (2)     Misrepresenting the source, sponsorship, approval or certification of goods or services;
>
> (3)     Misrepresenting the affiliation, connection or association with, or certification by, another;
>
> . . .
>
> (5)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> . . .

/ / /

/ / /

1
2
3

        (7)     Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

4      57.   Defendants have committed, and continue to commit, an unlawful method of
5 competition, and unfair and deceptive acts in violation of Civil Code Section 1770 by their
6 commission of deceptive acts which have deceived and continue to deceive the consuming public,
7 including Plaintiff.  In particular, Defendants affirmatively misrepresented material facts and failed
8 to disclose material facts to the Plaintiff, including but not limited to the following:

9
10
11

       a.     Actively promoting and supporting the concept that a significant percentage of children suffer from ADD/ADHD which required narcotic treatment/ therapy;

12
13

       b.     Facilitating the inappropriate expansion of the  diagnostic criteria for ADD/ADHD in the DSM.

14      58.   Plaintiff, pursuant to California Civil Code? Section 1780 seeks an order of this
15 court enjoining such methods, acts and practices and an order requiring the Defendants to
16 undertake the following:

17
18

       a.     Disgorge all revenues and profits acquired as a result of the unlawful methods, acts and practices;

19
20

       b.     Provide restitution resulting from the unlawful method, acts and practices of defendants;

21       c.     Pay exemplary damages; and

22       d.     Any other relief this Court deems proper.

23                  **SECOND CAUSE OF ACTION**

24
25

        **UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 (Against All Named Defendants)**

26      59.   Plaintiff hereby incorporates by reference the allegations contained in the preceding
27 paragraphs as though fully set forth herein.

28  / / /

60.     Plaintiff hereby brings this action individually and on behalf of the general public pursuant to Section 17200 et. seq. of the Business and Professions Code of the State of California, the Unfair Competition Act.

61.     The acts complained of in each of the preceding paragraphs of this complaint, and each of them, constitute unfair and/or unlawful acts in competition in violation of Section 17200 of the California Business and Professions Code.  Such acts and violations have not abated and will continue to occur unless enjoined.

62.     These violations have injured Plaintiff, the General Public, and fair and lawful competition.  These violations have coextensively unjustly enriched the defendants.  Plaintiff and the general public are entitled to injunctive, disgorgement/restitution, and other equitable relief.

### THIRD CAUSE OF ACTION

### INDUCEMENT THROUGH FALSE AND MISLEADING STATEMENT UNDER BUSINESS AND PROFESSIONS CODE SECTION 17500
### (Against All Defendants)

63.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

64.     Plaintiff hereby brings this action individually and on behalf of the general public pursuant to Section 17500 et seq. of the Business and Professions Code of the State of California, the Unfair Competition Act.

65.     The acts of untrue and misleading advertising by defendants, and each of them, as described above presents  a continuing threat to members of the general public of California in that their prescription and use of the drug methylphenidate presents the serious threat of health consequences.

66.     The general public of the State of California have no other adequate remedy of law in that individual lawsuits  would prove too time consuming and burdensome and would not properly address the monetary damage and equitable relief requested herein.

/ / /

/ / /

/ / /

1    67.    As a direct and proximate result of the aforementioned acts, Defendants received

2 and continue to receive in excess of a billion dollars in sales from the sale of Ritalin to members of

3 the General Public of California who were prescribed and who ingested Ritalin as treatment for

4 ADD/ADHD to their detriment.

5    68.    These violations have injured the General Public and fair and lawful competition.  These

6 violations have coextensively unjustly enriched defendants, and each of them.  The General Public is

7 entitled to disgorgement of profits, restitution and other equitable relief.

8    **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiff prays for relief and judgment against Defendants, jointly and severally,

10 as follows:

11 **For the First Cause of Action:**

12    1.    Plaintiff prays for injunctive and declaratory relief as a result of Defendants' violation of

13 California Civil Code Section 1750 et. seq., as follows:

14        a.    Injunctive relief to halt unlawful methods, acts and practices engaged in by

15 defendants;

16        b.    Requiring Defendants to disgorge all revenues and profits acquired as a result of

17 their unlawful methods, acts and practices;

18        c.    Requiring Defendants to provide restitution resulting from unlawful methods,

19 acts and practices of defendants;

20        d.    Requiring Defendants to pay exemplary damages; and

21        e.    Any further relief this Court deems proper.

22 **For the Second and Third Causes of Action:**

23    1.    Plaintiff prays for equitable relief for violations of Section 17200 and Section 17500 of

24 the Business and Professions Code as hereinabove alleged.  Such relief includes:

25        a.    Injunctive relief to halt prior violations of law and to assure fair and lawful

26 competition, including court orders regulating advertising, marketing, and production practices;

27        b.    Restitution to plaintiff and the general public who have been injured or otherwise

28 disadvantaged by defendants' unfair and unlawful acts in competition;

1           c.       Restitution sufficient to fully disgorge the revenues obtained from plaintiff and

2 the general public for unfair and unlawful acts in competition;

3           d.       For attorneys' fees as provided by statute and/or pursuant to the "common fund"

4 doctrine and/or pursuant to equitable principles of contribution.

5 **For All Causes of Action:**

6       1.       For Plaintiff's reasonable attorneys' fees and costs.

7       2.       For prejudgment interest as provided by law.

8       3.       For costs of suit incurred herein.

9       4.       For such other and further relief as this Court deems equitable, just and proper.

10 **JURY DEMAND**

11     Plaintiff herein demands a trial by jury.

12 DATED: *March 1, 2001*           DOUGHERTY, HILDRE, DUDEK & HAKLAR

13

14                By:     *Peggy J. Reali*

15                       Donald P. Hildre; SBN 066188
                      Thomas D. Haklar; SBN 169039

16                       Peggy J. Reali; SBN 153102
                      DOUGHERTY, HILDRE, DUDEK & HAKLAR

17                       2550 Fifth Ave., Suite 600
                      San Diego, CA 92103

18                       (619) 232-9131; Fax (619) 232-7317
                      Attorneys for Plaintiff Todd Vess, a Minor, by and through

19                       Deborah Vess, his Guardian ad Litem,
                      individually and on Behalf of Those Similarly

20                       Situated and on behalf of the General Public.

21                       John P. Coale
                      Julia W. McInerny

22                       COALE COOLEY LIETZ McINERNY
                      818 Connecticut Avenue, N.W., Suite 857

23                       Washington, D.C. 20006
                      (202) 887-4770; Fax (202) 887-4778

24

25                       Richard F. Scruggs
                      Sidney A. Backstrom

26                       Robin Reid Boswell
                      SCRUGGS, MILLETTE, BOZEMAN & DENT, P.A.

27                       P.O. Drawer 1425
                      Pascagoula, Mississippi 39568-1425

28                       (228) 762-6068; Fax (228) 762-1207

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Marc C. Saperstein
Kevin Decie
DAVIS, SAPERSTEIN & SOLOMON
375 Cedar Lane
Teaneck, NJ 07666
(201)907-5000; Fax (201) 692-0444

C. Andrew Waters (CA Bar No. 147259)
Tex. State Bar No. 20911450
Charles S. Siegel
WATERS & KRAUS
3219 McKinney Ave.
Dallas, Texas 75204
(214) 357-6244; Fax (214) 522-9286

1   Donald F. Hildre; SBN 066188
    Thomas Haklar; SBN 169039
2   Peggy J. Reali; SBN 153102
    DOUGHERTY, HILDRE, DUDEK & HAKLAR
3   2550 Fifth Avenue, Suite 600
    San Diego, CA 92103
4   (619) 232-9131, FAX (619) 232-7317

5   John P. Coale; SBN 212662
    Julia W. McInerny
6   COALE LIETZ McINERNY BROADUS
    818 Connecticut Avenue, N.W., Suite 857
7   Washington, D.C. 20006
    (202) 887-4770; Fax (202) 887-4778
8
    Richard Scruggs
9   SCRUGGS, MILLETTE, BOZEMAN & DENT P.A.
    P.O. Drawer 1425
10  Pascagoula, Mississippi 39568-1425
    (228) 762-6068
11

12              **UNITED STATES DISTRICT COURT**

13             **SOUTHERN DISTRICT OF CALIFORNIA**

14

15  TODD D. VESS, a Minor, by DEBORAH VESS,     )   CASE NO.  00CV1839B (CGA)
    his Guardian ad Litem, individually, on behalf of )
16  those Similarly Situated and on behalf of the )
    General Public of the State of California,    )
17                                                )
                     Plaintiffs,                  )   **PROOF OF SERVICE BY MAIL**
18                                                )
              v.                                  )
19                                                )
    CIBA-GEIGY CORP. USA; NOVARTIS              )
20  PHARMACEUTICALS CORP.; CHILDREN             )
    AND ADULTS WITH ATTENTION-DEFICIT/          )
21  HYPERACTIVITY DISORDER (CHADD);             )
    AMERICAN PSYCHIATRIC ASSOCIATION,           )
22  and DOES 1 through 100, inclusive,            )
                                                  )
23                   Defendants.                   )
    _____)
24

25       I, CAROLYN FLAUGHER, certify as follows:

26          I am over the age of eighteen years and not a party to the action; I am employed in the County

27  of San Diego, State of California, within which county the subject mailing occurred; my business address

28  is 2550 Fifth Avenue, Suite 600, San Diego, California 92103; I am familiar with this firm's practice for

1  collecting and processing correspondence for mailing with the United States Postal Service pursuant to

2  which practice all correspondence will be deposited with the United States Postal Service the same day

3  in the ordinary course of business.

4       I served the following document(s):  **FIRST AMENDED COMPLAINT**

5  by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each

6  such addressee respectively as follows:

7  FAEGRE & BENSON LLP
  James A. O'Neal
8    Bruce Jones
  Joseph M. Price
9    Bridget M. Ahmann
  2200 Wells Fargo Center
10  90 South Seventh Street
  Minneapolis, MN 55402
11       Attorney for Novartis Pharmaceuticals Corp and Ciba-Geigy Corp. USA

12  ARTER & HADDEN LLP
  Roxanne M. Wilson
13  725 S. Figueroa Street, Suite 3400
  Los Angeles, CA 90017-5434
14       Attoney for Novartis Pharmaceuticals Corp and Ciba-Geigy Corp. USA

15  CROWELL & MORING LLP
  Laurel Pyke Malson
16  Luther Zeigler
  William L. Anderson
17  1001 Pennsylvania Avenue, N.W.
  Washington D.C. 20004-2595
18       Attorney for American Psychiatric Association

19  ARENT FOX KINTNER PLOTKIN & KAHN, PLLC
  Gerald Zingone, D.C.
20  1050 Connecticut Avenue, N.W.
  Washington D.C. 20036-5339
21       Attorney for CHADD

22  ARTER & HADDEN LLP
  Michael Drury
23  550 W "C" Street, 16th Floor
  San Diego, CA 92101-3568
24       Attorney for Novartis Pharmaceuticals Corp and Ciba-Geigy Corp. USA

25  / / /

26  / / /

27  / / /

28

Case No. 00-CV-1839 B (CGA)
PROOF OF SERVICE

1   POST KIRBY NOONAN & SWEAT LLP
    David J. Noonan
2   American Plaza
    600 West Broadway, 11th Floor
3   San Diego, CA 92101
        Attorney for American Psychiatric Association
4

5   CHAPIN SHEA MCNITT & CARTER
    Edward D. Chapin
    501 West Broadway, 15th Floor
6   San Diego, CA 92101-3541
        Attorney for CHADD
7

8        I then sealed each envelope and placed each for collection and mailing on March 2, 2001,

9   following ordinary business practices.

10        I declare under penalty of perjury under the laws of the State of California that the foregoing is

11   true and correct.

12        Executed on March 2, 2001.

13

14

15       Carolyn Flaugher

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 00-CV-1839 B (CGA)
PROOF OF SERVICE